The hearing of the application in question was had upon affidavits furnished by the relators, containing a statement of the facts upon which the relief was claimed. These statements were not traversed by the defendants, and by proceeding to a hearing without doing so, they admitted their truth. The course pursued, was equivalent to a demurrer on the part of defendants, and it can succeed only by showing that upon the facts stated, the relator was not in law entitled to the relief demanded. The only question in the case is whether the county is liable to the town of Oswegatchie for the temporary support of the county poor.
The affidavits alleged that the distinction between town and county poor, at the time the transactions in question occurred, existed in St. Lawrence county, and that the superintendents of the poor of the town of Oswegatchie had necessarily expended for out-door relief in temporary support of county paupers a certain sum of money. That an itemized account of such expenditures, duly verified, was made out by the relators and presented to the defendants at their annual session in 1884, with a request that the same be audited and allowed. That said board of supervisors "refused to audit or allow said account or any part thereof on the ground" "that through its action in 1883 it had adopted the Livingston County Act, and that by the adoption of said act the said corporation could not make a legal charge against the county of St. Lawrence for out-door relief for county paupers." The statement thus made was equivalent to a denial by the defendant of the allegations of the relator, that the distinction between county and town poor existed in said county, and formed an issue of law upon that question.
It is not denied but that the action of the board of supervisors in adopting the Livingston County Act, if legal, abolished the distinction between town and county poor with reference to temporary relief in St. Lawrence county, and the question is whether such board had power to adopt it.
It is claimed by the respondent that the enactment of chapter 28 of the Laws of 1882, making the town of Oswegatchie a separate and distinct poor district, operated as a repeal of the *Page 544 
privilege extended by chapter 245, Laws of 1846, to the supervisors of that county to adopt the Livingston County Act. This claim is based upon the theory that there is such repugnancy between that act and chapter 28 of the Laws of 1882 that they cannot both be executed and administered, and that it must be inferred therefrom, that the legislature intended to repeal the privilege conferred upon boards of supervisors by the Laws of 1846 to adopt the provisions of a hostile and repugnant act.
Upon a careful examination of the several acts referred to, and of the provisions of the Revised Statutes relating thereto, we have been unable to see any such repugnance between those acts, as is claimed to exist. By the general law of the State boards of supervisors have power at will to abolish or revive distinctions existing in their counties between town and county poor. (2 R.S. [7th ed.] 930.) They also had power to abolish such distinction, and make the support of all the poor of the county a county charge. (3 R.S. [7th ed.] 1858, § 24.) By chapter 334 of the Laws of 1845, commonly called the Livingston County Act, all temporary relief afforded to paupers in that county was made a charge upon the several towns in which said paupers resided. By chapter 245 of the Laws of 1846 the boards of supervisors of any county in the State were authorized to adopt the provisions of this act, and extend and apply the same to their respective counties. The board of supervisors of St. Lawrence county did in 1883, and presumably before any of the transactions involved in this litigation occurred, by resolution adopt the provisions of said Livingston County Act. The necessary effect of this action, if duly authorized, was to make such temporary relief as might be extended to paupers in the several towns of St. Lawrence county, by the authorities thereof, a town charge.
We are of the opinion, however, if the adoption of the act in question conflicted with or was repugnant to the provisions of chapter 28 of the Laws of 1882, that the board of supervisors had no legal power to accept the privilege accorded by the act of 1846. It cannot be supposed that the legislature provided a law to regulate the relations existing between a *Page 545 
county and its several towns with respect to the support of the poor, and still left it optional with either of said parties to nullify the legislative will at its pleasure.
The only affirmative provision in the law of 1882, defining the liabilities of the respective towns in the county of St. Lawrence, and of the county for the support of the poor, is contained in the first section of the act reading as follows: "The town of Oswegatchie shall not hereafter be subject to taxation for the support or maintenance of the town poor of or in the other towns of the county of St. Lawrence, nor shall the other towns of the county of St. Lawrence be taxed or required to contribute to the support of the town poor of or in the town of Oswegatchie, but such town of Oswegatchie for all the purposes of supporting (its) poor within its limits, and carrying into effect the laws of the State, shall be separate and in distinct district." It will be observed that no reference is here made to county poor, and the whole force of the enactment is directed to the rights and liabilities of the several towns in respect to town poor. The act then proceeds and, among other things, provides that five persons named shall constitute a corporation under the name of "The Superintendents of the Poor of the Town of Oswegatchie" for the purpose of administering the poor laws in such town. They are to have the sole and exclusive care and management of the poor in such town, and are required to provide for and maintain such persons in the manner mentioned in such act, and for that purpose are invested with all of the powers and authority now vested by law in overseers of the poor of towns, and in superintendents of the poor of counties, not inconsistent with the provisions of this act. They are required to visit the poor at their residences, to inquire into their circumstances and ability to support themselves, and in their discretion to direct either permanent or temporary relief for such persons. They are also authorized to "so contract for, purchase, and provide provisions, fuel, clothing and other necessaries for the support of or distribution among the poor as, in their judgment, they may deem necessary." It was further provided, "that nothing in this act shall *Page 546 
be so construed as to require or compel the town of Oswegatchie to support any county pauper or State pauper. Neither shall it be construed as exempting or relieving the town of Oswegatchie from paying its full share of the expense of supporting the county or State poor." It is not claimed that this act established any new rule for the support of town poor in the several towns of St. Lawrence county, and it is evident that it merely gave the form of an especial statute to rights and liabilities already existing and in force under the general laws of the State. The act expressly disclaimed any intention thereby to interfere with, or affect the several liabilities of the parties in respect to the temporary support of county paupers in such county, and left such liabilities as they before existed, subject to the general powers conferred upon boards of supervisors to regulate the subject. As we have seen, such boards had the power to abolish or revive such distinctions, or to make the temporary support of all paupers a county charge, or, as by the Livingston County Act, altogether a town charge.
By the adoption of the Livingston County Act the board of supervisors have simply added to the responsibilities of the several towns of the county by imposing upon them, respectively, the duty of extending temporary relief to such county paupers, as might be within their several jurisdictions needing support.
It is the duty primarily of the local authorities to provide for and support all of the poor within their jurisdiction, and the only effect of a law abolishing the distinction between town and county paupers is to deprive the town of the right of reimbursement from the county, for such expenses where the Livingston county rule prevails.
While this act changed the existing law as to the temporary support of county paupers in the town of Oswegatchie, it did the same thing in all of the other towns in the county; and if thereby the responsibilities of the town of Oswegatchie were increased in respect to the support of county poor in its jurisdiction, they were thereby relieved from liability for such expenses incurred in the other towns of the county. It seems *Page 547 
to us that the board of supervisors had an undoubted right to make these provisions.
The general policy of the law is adverse to repeals by implication, and special rules of interpretation require the provisions of different statutes, to be so construed as to harmonize and avoid conflict, unless the plain meaning of the language is thereby violated. We can, however, see nothing in the act of 1882, which either expressly or by reasonable implication, conflicts with the possession of the power exercised on the part of the supervisors.
There is nothing in the act expressly restricting the powers of the board of supervisors in this respect, and we can see no evidence in the act of an intention on the part of the legislature so to do. The town of Oswegatchie is, except so far as it is exempted from their control by the act of 1882, subject to the provisions of the general statutes of the State in respect to the support of its county poor, and can claim no independence therefrom, unless by virtue of some special provision of law. We find no such in the act of 1882.
The orders of the General and Special Terms should, therefore, be reversed, and the application for a mandamus denied, with costs.
All concur.
Orders reversed.