STATE OF MINNESOTA, *ex rel.* Leon E. Lum, *vs.* DAVID ARCHIBALD.

May 28, 1890.

**Statute—Repeal by Implication.**—To justify a court in holding that an act of the legislature is repealed by one subsequently passed, it must appear that the later enactment is certainly and clearly in hostility to the earlier. If by any reasonable construction the two statutes can stand together, they must so stand. It is only in the event that harmony is impossible that the earlier enactment is repealed.

**Same—Special Act not Repealed by General Law.**—From the terms of Laws 1887, *c.* 118, which detached from the unorganized county of Cass a part of its territory, and attached it to the organized county of Crow Wing, (if the electors of the last-mentioned county should approve the measure by ballot,) it is manifest that the legislative mind was particularly and specially called to the subject therein disposed of. *Held*, that said chapter 118 was not repealed by the passage, subsequently, of an act which was of general application to the unorganized counties of the state, viz., Laws 1887, *c.* 119.

**Mandamus.**—It is a fundamental principle of the law of *mandamus* that the writ will never be granted in cases when, if issued, it would prove unavailing.

Appeal by the respondent below from an order of the district court for Crow Wing county, *Holland*, J., presiding, directing the issuance of a peremptory writ of *mandamus*.

*G. S. Fernald* and *Flannery & Cooke*, for appellant.

*Gordon E. Cole* and *Leon E. Lum*, for respondent (relator.)

COLLINS, J.   This is an appeal from an order directing that a peremptory writ of *mandamus* issue, addressed to the defendant, an assessor, requiring and compelling him, as such, to proceed with the assessment of real and personal property in certain territory alleged to be a part of Crow Wing county. The controversy arises by reason of the passage of an act entitled "An act relating to the change of county lines of unorganized counties, and annexation of unorganized territory to organized counties," which was approved on February

25, 1887, now known as chapter 119, Gen. Laws of that year; and the passage of another act, approved on February 18th of the same year, entitled "An act to detach certain territory from the unorganized county of Cass, and attach the same to Crow Wing county." It is now found as chapter 118, Laws 1887. The appellant contends that the act last mentioned (chapter 118) was repealed upon the passage and approval of the other act, (chapter 119,) and this we regard as the only question needing special consideration. By the several sections of chapter 118, a certain portion of the unorganized county of Cass was detached therefrom, and, subject to the approval of the legal voters of the organized county of Crow Wing, attached to the latter. The proposition was to be submitted to the electors of the organized county at the next general election, and, if approved by a majority of those voting thereon, the governor of the state was required to make proclamation of the fact. There was also another provision of the act in reference to taxes previously levied on property affected by the change, remaining uncollected at the time of its approval by the legal voters.

There are three sections in the law approved February 25th: The first, that no change shall be made in the lines of an unorganized county, and no part thereof shall be annexed to an organized county, "without first submitting the proposition for such change of line or annexation to the electors of the county or counties to be affected thereby," and an adoption of the proposition by a majority of the electors of each county voting thereon; the second, "that all acts or parts of acts inconsistent with this act are hereby repealed;" and the third, (as was also provided in chapter 118,) that the same should take effect from and after its passage. In accordance with the provisions of chapter 118, the question of annexing the territory therein described to Crow Wing county was duly submitted to the legal voters thereof at a general election held in November, 1888, at which time a majority voted in favor of annexation. The electors of Cass county did not vote upon the proposition. The result in Crow Wing was proclaimed by the governor prior to April 2, 1889, and on that day defendant was duly appointed assessor for a portion of Crow Wing county, including, if chapter 118 was unrepealed, the

territory in dispute.    Thereafter defendant refused to proceed with the assessment of personal property within this territory, solely on the ground heretofore indicated, that the earlier act (chapter 118) was repealed by implication on the passage of the later, (chapter 119.)

1. Starting out with the proposition, which has become axiomatic, that repeals by implication are not favored, we may safely say, as a reasonable proposition, that a legislature does not intend to effect so important a measure as the repeal of a law, without expressing its intent so to do.    Such an interpretation, therefore, should not be adopted unless it be inevitable, and any reasonable construction of the later act which offers an escape from it is more likely to be in consonance with the real intention.    It is a rule well founded in reason, as well as in authority, that to give an act not clearly intended as a substitute for another the effect of repealing it, the implication of an intent to repeal must be disclosed by a repugnancy between its provisions and those of the earlier law, so positive as to be irreconcilable by any fair, strict, or liberal construction thereof, which would, without destroying its manifest intent and meaning, find for it a reasonable field of operation, preserving at the same time the force of the earlier law, and construing both together in harmony with the whole course of legislation upon the subject.    To justify a court in holding that an act is repealed by one subsequently passed, it must appear that the later provision is certainly and clearly in hostility to the former.    If by any reasonable construction the two statutes can stand together, they must so stand.    If harmony is impossible, and it is only in that event, the earlier enactment is repealed.    *Wood* v. *U. S.*, 16 Pet. 342; *State* v. *Stoll*, 17 Wall. 425; *Chew Heong* v. *U. S.*, 112 U. S. 536, (5 Sup. Ct. Rep. 255;) *People* v. *Board Suprs. St. Lawrence Co.*, 103 N. Y. 541, (9 N. E. Rep. 311;) *Rounds* v. *Waymart Borough*, 81 Pa. St. 395; *Covington* v. *City of East St. Louis*, 78 Ill. 548; *Iverson* v. *State*, 52 Ala. 170; *Pratt* v. *Atlantic & St. Lawrence R. Co.*, 42 Me. 579; Sedg. St. & Const. Law, 105; Smith, St. Law, 879.    Of course, repeal by implication can be effected by inconsistent enactments at the same session of the legislature; but it has been said that statutes enacted at the same session are to be

construed to a certain extent as one act, and therefore in such a case there is a much stronger presumption against an intention to repeal which is not expressed than in case of statutes passed at different sessions; and in such cases there should be such an exposition as will give effect to what appears to be the main intent of the lawmaker. *Peyton* v. *Moseley,* 3 T. B. Mon. 77; *Eckloff* v. *District of Columbia,* 4 Mackey, 572; *Board of Commrs. of La Grange Co.* v. *Cutler,* 6 Ind. 354.

In the cases first above referred to, and in the large number of authorities therein cited, may be found instances in which the general rules in respect to repeal by implication have been applied, and it only remains for us to make a like application to the facts in hand. As section 1, art. 11, of the constitution bears upon changes in the lines of organized counties only, the law-makers were not restricted in any manner when dealing with the county of Cass. But, as chapter 118 affected the boundary lines of the organized county of Crow Wing, the measure had to be formally approved by the electors of that county before the alteration declared by the legislature became a certainty, and this approval was provided for in the act. Without this enactment, the voters of Crow Wing county were helpless. Its passage, whereby the boundary lines of both counties were changed in so far as that could be accomplished by legislation, was quite as essential to the transfer of a portion of the unorganized county to the organized as was the step subsequently to be taken by the legal voters. And when the law-makers considered and determined upon the subject of this change in county lines, fully and finally covering all matters within the scope of legislative authority, we are unable to see why this action was not as complete and of as great force as if neither of these counties had been organized, and the sections providing for a ballot had been omitted. If such had been the case, no one would have contended that there had been a repeal by implication. When enacting chapter 118, the legislative mind was particularly called to Cass county, and that part of its territory which was to be attached to another county, if the electors of the last-mentioned county so willed it by their ballots. The intent in reference to this particular subject was specially manifested and announced, while

chapter 119 was general in its application to the unorganized counties of the state. See Dill. Mun. Corp. § 87. Therefore, and without considering the fact that these laws were passed about the same time and at the same session of the legislature, we conclude that both acts may stand, and that the later general law is not in hostility to, and may readily be harmonized with, the earlier, which is special and local.

2. The suggestion of appellant that the relator has not such a beneficial interest in the subject-matter of this controversy as entitled him to file the information upon which this proceeding is based, is disposed of by *State* v. *Weld,* 39 Minn. 426, (40 N. W. Rep. 561.)

3. We have heretofore stated that this appeal is from an order directing the issuance of a peremptory writ of *mandamus,* requiring and directing defendant, as an assessor, to perform his duties by assessing the personal property within the district in dispute. The proceeding which led to the order appealed from was initiated in the month of June, but the order itself was not made by the court until August 31, 1889. The appellant insists that this was too late, and for that reason there must be a reversal of the order. Under the statute, (Gen. St. 1878, *c.* 11, § 33,) as amended, (Laws 1881, *c.* 10, § 6,) the defendant assessor should have made his assessment in the months of May and June. By section 34, *c.* 11, *supra,* property can be assessed later, and up to such time as the officer makes return of his books. The town board of review meets on the fourth Monday in June, (section 39 of said chapter,) and evidently it is the intention of the law that the assessor should have then completed his labors. If he has omitted property, real or personal, from the list, it is made the duty of this board to enter the same for assessment. The statute (section 41) expressly provides that the assessment-books, lists, and statements shall be returned by the assessor to the county auditor on or before the first Monday of July, and we are not aware of any express provision of the tax-laws whereby any power or authority over the assessment-books is given to the assessor after he makes this return, or by which he could be permitted to perform any official act whatsoever, unless notified by the auditor of an omission, as provided by section 43. If so notified, the assessor shall ascer-

STATE *v.* ARCHIBALD.          333

tain values, and make the necessary corrections.   The county board
of equalization commences its work on the third Monday of July,
and is authorized to continue in session for a period not exceeding
four weeks.    Section 44, *c.* 11, *supra,* as amended by Laws 1885, *c.*
2, § 2, and chapter 119.    Therefore, if the defendant, whose duties as
assessor do not seem to have been confined to the disputed territory,
complied with the law,—and we are bound to presume that he
did,—the assessment-books placed in his hands had long been re-
turned to the auditor when the order appealed from was made.    Not
only had this occurred, but the auditor and the county board of
equalization had acted upon them, and the board had finally ad-
journed.    So that the writ which would have followed the order
would have been useless and ineffectual.    The defendant could not
have obeyed it, his authority to make the assessment had ended, the
books had been returned to the auditor, and he was practically out
of office.    It is a fundamental principle of the law of *mandamus* that
the writ will never be granted in cases where, if issued, it would
prove unavailing.    High, Extr. Rem. § 14, and cases cited.   For the
reason that pending this litigation, and before a determination was
reached below, the right and power to make the assessment demanded
had terminated, the order appealed from must be reversed, but no
statutory costs will be allowed to the prevailing party.    This inevita-
ble result might have been announced without touching upon the
main feature of the controversy, hereinbefore discussed at length with
a conclusion adverse to appellant, but, in view of the public interests
involved, it has been deemed advisable to cover that question in this
opinion.

    Order reversed.