## ELMER SPRINGBORG v. WILSON & COMPANY, INC.

95 N. W. (2d) 598.

March 26, 1959—No. 37,608.

*J. Frank Boyles,* for relator.
*Douglas Hall,* for respondent.

KNUTSON, JUSTICE.

Certiorari to review a decision of the Industrial Commission assessing a penalty against employer under M. S. A. 176.225.

Elmer Springborg was employed as an electrician at relator's plant in Albert Lea, Minnesota. On December 31, 1952, he was injured when a trolley ran off the end of an overhead rail and struck him on the head. Employer, who was self-insured, commenced payments promptly and has paid substantial amounts for compensation, medical and hospital benefits, and traveling expenses. On May 26, 1954, em-

ployer served a notice of discontinuance of payments on the commission. Objections were filed by employee. On July 6, 1954, employee filed a petition for change of physicians, and on July 19, 1954, the commission appointed a neutral physician. Thereafter, employee was examined and attended by doctors at the Mayo Clinic in Rochester, Minnesota. Promptly upon the filing of the report of such doctors, employer again commenced payment of compensation on or about August 27, 1954, without waiting for any order from the commission requiring it to do so.

On September 22, 1954, employee filed a petition for the imposition of penalty under § 176.225, alleging a consistent pattern of abuse and neglect of employer, consisting of: (1) Failure to give prompt first-aid treatment; (2) delay in correct diagnosis of his injury; (3) attempts by employer to minimize his injuries and to prematurely put employee back to work; (4) delays in furnishing medical treatment; (5) improper attempts to withhold benefits in order to collect an unrelated claim from employee; (6) improper and unjustified discontinuance of payments on May 21, 1954; (7) failure to provide adequate medical care and treatment; and (8) failure to pay proper travel allowances and medical expenses. On November 8, 1954, the commission, without hearing testimony, by the unanimous decision of the three members of the commission at that time, denied the petition for imposition of penalty. On review here, we remanded, holding that, upon request of employee, he was entitled to a hearing before a referee. The matter then was referred by the commission to a referee, who, after a hearing, made the two following pertinent findings:

"VII.

"That in May of 1954 the employer discontinued compensation payments to the employe upon notice as provided by M. S. A. 176.34[1] and filed a doctor's report therewith. The employer resumed payments upon receipt of report from a doctor of the Mayo Clinic in the month of August, 1954.

[1] The section referred to, since the enactment of L. 1953, c. 755, as presently codified, is § 176.241.

"VIII.

"That this employer did not institute any proceedings or defense which did not present a real controversy, nor was there frivolous, unreasonable, vexatious delay of payment or neglect or refusal to pay or intentional underpayment of any compensation."

Based on such findings, the referee denied the petition for imposition of penalty.

Upon appeal to the commission, the above two paragraphs were set aside, and in place thereof the commission found:

"VII.

"That on May 29, 1954, the employer discontinued compensation payments and did not resume payments until August 27, 1954.

"VIII.

"That said failure to pay compensation payments during said period designated in Finding VII, constitutes unreasonable delay of payments under M. S. A., Sec. 176.225."

Based on such findings, the commission imposed a penalty of $800.

The three-member commission was divided. The two commissioners who held against employer were not members of the commission when it originally denied the petition for imposition of penalty. The commissioner who was then a member dissented in the final disposition of the case on the ground that no justification for imposing a penalty existed in this case.

In employee's petition and in the original review before us, employee made a number of serious charges, which have been set forth above and which, if substantiated by the evidence, would have justified the imposition of a penalty. In our original decision, Springborg v. Wilson & Co. 245 Minn. 489, 491, 73 N. W. (2d) 433, 434, we noted the charges made by employee as follows:

"Because of alleged delay in obtaining initial first aid treatment of the injury; alleged delays in later medical treatment caused by the necessity of obtaining approval from employer before a doctor could begin examination or treatment; the discontinuance of compensation payments during certain periods; and other alleged abuses, employee petitioned the commission asking for the imposition of a penalty upon

employer under the terms of M. S. A. 176.225."

None of the matters specifically mentioned as grounds for the imposition of a penalty in our original decision were proved. The commission found, as the only ground for the imposition of a penalty, the discontinuance of payments upon notice pursuant to § 176.241. The evidence in the record before us fails to support any finding on the other grounds alleged in employee's petition. The record shows that employee was treated promptly by a number of qualified doctors, many of whom are specialists in their own line. Among them was Dr. C. C. Chatterton, of whom employee's doctor from the Mayo Clinic, Dr. J. M. Janes, was asked: "do you know Dr. C. C. Chatterton?" And the witness answered: "I do and have the highest regard for him."

The question now before us has therefore narrowed down to a determination of whether the commission is at liberty to assess a penalty against an employer under § 176.225 for a delay in payments, caused by the filing of a notice of discontinuance under § 176.241, if, after a hearing, the commission determines that there is still liability.

The two sections of our statutes pertinent here, in so far as they are material, read as follows:

§ 176.225, subd. 1. "Upon reasonable notice and hearing or opportunity to be heard, the commission or upon appeal, the supreme court may award compensation, in addition to the total amount of compensation award, of up to 25 percent of that total amount where an employer or insurer has:

"(a) instituted a proceeding or interposed a defense which does not present a real controversy but which is frivolous or for the purpose of delay; or,

"(b) unreasonably or vexatiously delayed payment; or,

"(c) neglected or refused to pay compensation; or,

"(d) intentionally underpaid compensation."

§ 176.241. "Subdivision 1. Where an employee claims that the right to compensation continues, or refuses to sign or objects to signing a final receipt for compensation, the employer may not discontinue payment of compensation until he notifies the industrial commission in writing of his intention to do so.

"The notice to the commission shall state the date of intended discontinuance, the reason for such action, and the fact that the employee objects to the discontinuance. The notice shall be accompanied by whatever medical reports are in the possession of the employer bearing on the physical condition of the employee at the time of the proposed discontinuance.

"Subd. 2. Except where the commission orders otherwise, until the notice and reports have been filed with the commission, the liability of the employer to make payments of compensation continues.

"When the commission has received a notice of discontinuance and available medical reports, the duty of the employer to pay compensation is suspended pending an investigation, hearing, and determination of the matter by the commission as provided in the following subdivisions.

"Subd. 3. When the commission has received a notice of discontinuance, it shall immediately send the employee a copy of the notice and copies of whatever medical reports have been submitted in conjunction with the notice. The commission shall make an investigation to determine whether the right to compensation has terminated. If it appears from the investigation that the right to compensation may not have terminated, the commission shall schedule a hearing before the commission, or a commissioner or referee, to determine the right of the employee, or his dependent, to further compensation.

"The hearing shall be held within a reasonable time after the commission has received the notice of discontinuance. The commission shall give eight days notice of the hearing to interested parties.

"Subd. 4. When the hearing has been held, and he has duly considered the evidence, the person who held the hearing shall promptly enter an order directing the payment of further compensation or confirming the termination of compensation. Where the order confirms a termination of compensation, the commission shall notify the employer of such action. This notification relieves the employer from further liability for compensation subject to the right of review afforded by this chapter, and to the right of the commission to set aside the order at any time prior to the review and grant a new hearing pursuant to this chapter."

The language of § 176.241 is clear and unambiguous. The legislature, in the enactment of this provision, gave the commission some discretion in determining whether payments should continue prior to the filing of notice and the required medical reports, but it gave the commission no discretion thereafter. The provision relating to the suspension of payment after notice and reports are filed is clear and explicit. It states:

"When the commission has received a notice of discontinuance and available medical reports, *the duty of the employer to pay compensation is suspended pending an investigation, hearing, and determination of the matter by the commission* as provided in the following subdivisions." (Italics supplied.)

If the legislature had seen fit to do so, it could have provided, as it did in the first part of this subdivision, that payments could be suspended only by permission of the commission, or it could have provided that payments must continue during the period of investigation. The legislature did not do so. The statute provides in clear and unmistakable language that, after the notice and reports are filed, payments are suspended until the commission acts.

After the notice of discontinuance was filed, employee requested and was granted a change of physicians. The delay in determining whether employer was still liable for compensation may have been due, at least in part, to the desire of employee and the commission to obtain the report of such substituted doctor. If so, such delay is not chargeable to employer and should not be made the basis for imposition of a penalty.

The statute places upon the commission the responsibility for making a *prompt* determination of the right to discontinue payments so as to alleviate, as far as possible, any hardship which the employee may suffer as a result of discontinuance of payments where liability still exists. That responsibility cannot be shifted to the employer, nor should the employer be assessed a penalty for a delay in making such determination. The mere fact that the determination is adverse to the contentions of the employer is no ground for imposition of a penalty, at least in the absence of a showing of bad faith. The statute gives the employer who believes that he no longer is liable a right to have such

liability determined by the commission. If he exercises that right, he should not be penalized for having done so.

Our original Workmen's Compensation Act was enacted by L. 1913, c. 467. Under this act, liability, when disputed, was determined by the district court. The original act was superseded by L. 1921, c. 82. Under that act, responsibility for the administration of the act was placed upon the Industrial Commission. The original provision relating to the discontinuance of payments is found in L. 1921, c. 82, § 35. Until the amendment by L. 1953, c. 755, § 34, the commission was required to hold the hearing on the right to discontinue payments within 25 days after receipt by the commission of the notice from the employer. In the 1953 amendment the commission is required to hear the matter within a reasonable time after the commission has received the notice of discontinuance, but the obligation to hear the matter promptly still rests on the commission.

Prior to the adoption of L. 1921, c. 82, the legislature set up an interim committee to investigate the whole matter relating to the best method of administering workmen's compensation laws. In the report of that committee to the legislature in 1921 we find the following:[2]

"The bill [proposed by the commission] also makes it the duty of the employer to commence and continue payment of compensation as and when due without the necessity of any agreement or order of the Commission and forbids the discontinuance of payment without notice to the Commission, if the person entitled to compensation objects to such discontinuance. Upon receipt of any such notice of discontinuance *it is made the duty of the Commission to promptly investigate the case* and if further compensation is due, *to promptly hear the matter and award such compensation;* otherwise, to notify the parties of the facts. Delays in payment and underpayment are severely penalized and may result in the revocation of the license of an insurer." (Italics supplied.)

The objective sought to be obtained by these statutory provisions is to provide the employee with compensation promptly. In case the

---

[2]Report of Special Interim Committee of the House of Representatives on Workmen's Compensation, 1921, p. 14.

employer believes that the right to compensation has ceased, he is given the right to notify the commission, and, if the employee objects, the obligation then devolves upon the commission to promptly hear the matter.

The evidence in the record before us does not sustain a finding upon which the imposition of a penalty can be justified. Even the members of the commission who held against employer had the following to say about its compliance with the orders of the commission:

"It is noted from the record, that at all times the employer did comply promptly with the orders of the Industrial Commission when issued. And when the report of the Mayo Clinic indicated the employe was still temporarily totally disabled the employer immediately commenced full payment of compensation and did not wait for any further order of the Commission."

The worst that can be said of employer is that, looking at the matter retrospectively after employee had been examined by doctors at the Mayo Clinic, such doctors did not agree with the information upon which employer based its decision to discontinue payments.

Employee claims that employer failed to file all medical reports it had in its possession. That may be true, but whatever reports employer had that were not filed with the notice were already in the possession of the commission. It should not be necessary to file copies of reports already possessed by the commission.

We find no evidence that will sustain a finding upon which a penalty may be assessed in this case.

Under the guise of a liberal interpretation, a dissent seeks to read something into § 176.241 that simply is not there. In doing so, the dissent ignores the most elemental rule of statutory construction that construction lies wholly in the domain of ambiguity. Where there is no ambiguity there is no room for construction, either liberal or otherwise. Where the words used in a statutory provision are clear and free from ambiguity, the language used by the legislature must be given its ordinary and usual meaning. These rules are so well established, both by statute and our decision law, that it seems useless to repeat them or to cite authorities to support the rules.[3]

[3]See, 17 Dunnell, Dig. (3 ed.) § 8938.

Section 645.16 reads in part:

"When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit."

In City of Minneapolis v. Village of Brooklyn Center, 223 Minn. 498, 501, 27 N. W. (2d) 563, 565, we said:

"Important here to determine is whether this statute is so worded as to lead to the view that there is ambiguity in its meaning. Since statutory interpretation lies wholly within the domain of ambiguity * * *, then, clearly, plain and unambiguous language leaves no room for construction. In such circumstances, 'the statute is its own best expositor.' * * * In other words, 'artificial reasoning [should not be] used to create a synthetic ambiguity,' nor should we ignore 'the fact that the purpose of construction is to remove ambiguity and not to make it.' "[4]

Nothing could be more clear than the language of § 176.241 that, when the notice of discontinuance and the medical reports required by statute have been filed with the Industrial Commission, "the duty of the employer to pay compensation is suspended pending an investigation, hearing, and determination of the matter by the commission." Without claiming that this language is ambiguous, the dissent seeks to apply a rule that has no application in the absence of an ambiguity, namely, that statutes which are in pari materia are to be construed together. While we have no quarrel with this rule, it obviously has no application here. This rule, as others relating to construction of statutes, comes into play only when the meaning of a provision of the statute under consideration is ambiguous. When two sections of the same act differ but the language of each is clear and unambiguous, we have no right to change the clear meaning of one section by reading into it something which is not there. It must be assumed that the legislature intended to say what it did in each section of the act, and, as long as the meaning of each is clear, it is our duty to apply it as it reads and

---

[4]See, also, Minneapolis-St. Paul Sanitary Dist. v. City of St. Paul, 240 Minn. 434, 61 N. W. (2d) 533; State v. End, 232 Minn. 266, 45 N. W. (2d) 378.

not to try to change it in order to accomplish a purpose which we think would be salutary but which the legislature obviously did not intend to accomplish. It would have been a simple matter for the legislature to have used language to express the purpose which the dissent seeks to accomplish if it had intended to do so. The plain fact is that it did not do so.

Reversed.

MURPHY, JUSTICE (dissenting).

I cannot agree with the majority decision. It is my view that we are required to construe M. S. A. 176.241 together with § 176.225. These statutes, which were enacted at the same session of the legislature, being in pari materia, should be construed harmoniously and together in an endeavor to ascertain the intent of the legislature. It is presumed that such acts are imbued with the same spirit and actuated by the same policy and should be construed so as to harmonize and give force and effect to the provisions of each. 17 Dunnell, Dig. (3 ed.) § 8984. In Reichert v. Victory Granite Co. 249 Minn. 407, 414, 82 N. W. (2d) 497, 502, we said:

"That the Workmen's Compensation Act, within practical limits, is to be liberally construed has been so often expressed in the decisions of this court that it does not need at this time either restatement or citation to support it. We take it that the provisions of the Workmen's Compensation Act, if they are to be applied liberally as intended, must be considered supplementary to each other; that they must be construed together whenever reasonable and practical and not violative of law or statutory construction in order to give effect to the purpose for which the act was originally enacted and subsequently broadened in scope and improved upon."

Section 176.225 provides that where an employer has instituted a proceeding, as he has done here, for the purpose of terminating compensation payments and does not present a real controversy but one which is frivolous or for the purpose of delay, or one which unreasonably or vexatiously delays payment, the commission is empowered to award additional compensation up to 25 percent of the total amount of the award. The majority opinion holds that the sanctions of this

statute may be avoided by § 176.241, which relates to "NOTICE TO COMMISSION OF INTENTION TO DISCONTINUE COMPENSATION PAYMENTS." This particular statute emphasizes that where an employee "claims that the right to compensation continues, or refuses to sign or objects to signing a final receipt for compensation" the employer may, by filing a notice of intention to discontinue payments to the employee "accompanied by whatever medical reports are in the possession of the employer bearing on the physical condition of the employee at the time of the proposed discontinuance," suspend payments pending investigation, hearing, and determination of the matter by the commission.

It is clear from the provisions of § 176.225 that it is designed to penalize the employer for arbitrarily and without good cause delaying or refusing to make compensation payments. It seems to me that a fair interpretation of § 176.241 leads to the conclusion that it applies to a situation where a malingering or recalcitrant employee who has recovered from his injuries "refuses to sign or objects to signing a final receipt for compensation." Under its provisions the employer is not required to submit additional evidence that the employee has recovered. It is only necessary that the notice "be accompanied by whatever medical reports are in the possession of the employer bearing on the physical condition of the employee at the time of the proposed discontinuance." It seems to me that this statute is designed as a shield to give the employer a means of terminating the proceeding where the employee has in fact recovered, and it was not intended as a weapon which the employer might use to harrass an employee who in fact is disabled and relies upon compensation payments as a substitute for his employment. To hold otherwise would be to say that the employer may arbitrarily under § 176.241 terminate compensation payments at any time. This proceeding could be repeated any number of times without subjecting the employer to the risk of penalty for arbitrary action. Under the interpretation adopted by the majority, the necessitous employee, subjected to the arbitrary interruption of his compensation payments, would under the pressure of need be forced to return to work before he has recovered. Such an interpretation is contrary to the spirit of the Workmen's Compensation Act.

The facts in this case point out the evil of interpreting § 176.241 without reference to the sanctions provided by § 176.225. There is no evidence in the record to the effect that the employee had recovered from the effects of his injuries.

From an examination of the medical reports I am satisfied that the employer had no medical opinion upon which to justify its action. The medical opinion upon which it acted was to the effect that "some type of light work" or "doing something active with his hands, and using them" would have a therapeutic value in bringing about his recovery. They knew at the time they discontinued the payments that the employee was at least entitled to temporary partial disability under § 176.101, subd. 2. The Industrial Commission in its majority opinion stated:

"* * * This statute is a part of our law just as much as the temporary total disability statute. We can concede that the defendant may have been in good faith in refusing to pay the plaintiff compensation for temporary total disability on the ground that there existed a bona fide dispute between them as to whether compensation was due for such disability. However, there existed no bona fide dispute between them as to the petitioner's temporary partial disability and thus the defendant could not have been in good faith when he discontinued all compensation payments in May of 1954. The employer did not pay compensation under the temporary partial provision, and thus forced the petitioner to litigate, although the employer knew from the medical reports in his possession that compensation was due for at least the temporary partial disability, and that in all probability the employe would have permanent partial disability. There was no question of the employer over-paying relative to any permanent partial disability prior to his being able to secure a determination as to the extent of his liability, inasmuch as the maximum healing period had not been paid. It is therefore quite apparent, that the employer's delay of payment in this matter, if not vexatious, was at least unreasonable. We therefore hold that the employer is subject to a penalty under the provisions of the act."

I think that the interpretation set forth in the majority opinion here is contrary to our policy, which is to the effect that the employee should have the benefit of a rule of construction that the Workmen's Com-

pensation Act must always be construed most liberally in favor of the injured workman. McCourtie v. United States Steel Corp. 253 Minn. 501, 93 N. W. (2d) 552; Reichert v. Victory Granite Co. 249 Minn. 407, 82 N. W. (2d) 497.

Since this dissent was written, the majority opinion has been extended to include a discussion of certain rules of statutory construction. The majority opinion now complains that the dissent ignores the rule that construction lies wholly in the domain of ambiguity and that where the words in a statutory provision are clear and free from ambiguity the language used by the legislature must be given its ordinary and usual meaning. If we were dealing only with the provisions of one independent enactment, I would agree that this criticism would have some merit. The trouble with the majority opinion is that it insists upon looking only at the provisions of § 176.241, which give the employer the right to suspend payments upon certain conditions, and ignores the clear provisions of § 176.225, which penalize the unwarranted suspension of compensation payments. Both of these sections derive from L. 1953, c. 755 (§§ 34 and 31, respectively), approved April 24, 1953. Chapter 755 is a codification and revision of the laws of this state relating to workmen's compensation. It should be kept in mind that the proceedings before us were instituted to invoke the sanctions of L. 1953, c. 755, § 31, now M. S. A. 176.225. Springborg v. Wilson & Co. 245 Minn. 489, 73 N. W. (2d) 433.

Since both of these sections relate to the subject of the suspension of compensation payments, it is not reasonable to assume, as applied to the issue before us, that we can ascertain the intention of the legislature by considering them separately, apart from their subject matter and the relation each bears to the other as part of the entire enactment. Statutes are presumed to have been passed with deliberation and with full knowledge of all existing ones on the same subject. 17 Dunnell, Dig. (3 ed.) § 8927. It is unreasonable to assume that the legislature would provide for sanctions to penalize arbitrary discontinuance of payments in one section of the statute and in the next provide that such penalty might be avoided merely by filing a notice of discontinuance together with available medical reports. Both provisions are part of a comprehensive system of law relating to workmen's compensation.

Under the well-recognized rules of statutory construction, statutes are not to be considered as isolated fragments of law but as a whole or parts of a single and complete statutory arrangement. The sections under consideration, which derive from the same legislative enactment (L. 1953, c. 755), must be considered together. 50 Am. Jur., Statutes, §§ 349, 350; 82 C. J. S., Statutes, § 367. It is the duty of this court to seek the intent of the legislature by a consideration of all of the legislation bearing on the subject of discontinuance of compensation payments and not by consideration of a portion only. In State ex rel. Hughes v. Reusswig, 110 Minn. 473, 476, 126 N. W. 279, 280, in quoting Mr. Chief Justice Ryan of the Supreme Court of Wisconsin, we pointed out that the court will not allow judicial interpretation to usurp the place of legislative enactment but that:

"* * * 'We owe great deference to the legislative authority. It is our duty to give effect to all its enactments, according to its intention, as far as we have constitutional right and power; and to that end it behooves us, as far as we are able, to place such a construction on statutes as will reconcile them to the constitution, and to give them effective operation, under the constitution, according to the intention with which they are passed. It would be palpable violation of judicial duty and propriety to seek in a statute a construction in conflict with the constitution or with the object of its enactment, or to admit such a construction when the statute is fairly susceptible of another in accord with the constitution and the legislative intention.' "

In holding that statutes relating to the same subject and having the same purpose should be construed together and that no part should be singled out for consideration apart from all legislation on the subject, we said in Foley v. Whelan, 219 Minn. 209, 211, 17 N. W. (2d) 367, 369:

"* * * Statutes relating to the same subject matter, especially where they have the same purpose in view, are *in pari materia* and are to be construed together the same as if they constituted but one statute. No act, or part of any act, or any section should be singled out for consideration apart from all the legislation on the subject. The object of the rule is to ascertain and carry into effect the intention of the legislature, and

it proceeds upon the supposition that the several statutes were governed by one spirit and policy and consequently were intended to be consistent and harmonious in their several parts and provisions."

See, also, Halverson v. Elsberg, 202 Minn. 232, 277 N. W. 535; Ausman v. Hoffmann, 208 Minn. 13, 292 N. W. 421; State ex rel. Lum v. Archibald, 43 Minn. 328, 45 N. W. 606; Huffman v. Independent Consol. School Dist. No. 11, 230 Minn. 289, 41 N. W. (2d) 455; Wold v. Bankers Surety Co. 133 Minn. 90, 157 N. W. 998; In re Improvement of County Ditch No. 11, Martin County, 253 Minn. 367, 91 N. W. (2d) 657; State ex rel. Carlton v. Weed, 208 Minn. 342, 294 N. W. 370.

If we view both of these provisions as related parts of an entire legislative enactment, we should reach the conclusion that the legislature did not intend by enacting § 176.241 to nullify or repeal the provisions of § 176.225. It seems clear to me that under the provisions of § 176.241 the employer may, by filing a proper notice of discontinuance, suspend payments only where such action is taken reasonably and not vexatiously or for the purpose of delay. The policy of the Workmen's Compensation Act is to provide to the injured workman prompt and certain compensation which will in part compensate him for his medical bills, injuries, and loss of income and at the same time free the employer from the hazards of the larger liability to which he might be subjected under the common law. "It provides a simple method for that purpose, operating without delay or unnecessary formality. * * * The policy of this law is to hasten not to delay proceedings thereunder." Strizich v. Zenith Furnace Co. 176 Minn. 554, 556, 223 N. W. 926, 927.

If we fairly construe both of these sections together in light of the object which the legislature seeks to accomplish, it seems apparent that § 176.241 gives the employer the right to suspend payments of compensation only when it acts in good faith on reasonable belief that its liability has been terminated. Where, however, the employer exercises its rights under § 176.241 and suspends workmen's compensation under circumstances where it is still liable, it acts at the risk of violating the standard set up by § 176.225. It is my view that these sections complement and supplement each other. The injured employee is protected from arbitrary action on the part of the employer by § 176.225. The

employer, as has been pointed out, is given the right to suspend compensation payments under § 176.241 where his liability has in fact terminated or where he has reasonable grounds to believe that his liability has terminated.

For the foregoing reasons, I respectfully dissent.