**METROPOLITAN SPORTS FACILITIES
COMMISSION, Respondent,**

v.

**GENERAL MILLS, INC., Appellant.**

No. C1–90–123.

Court of Appeals of Minnesota.

Sept. 4, 1990.

Review Granted Nov. 1, 1990.

David R. Knodell, Wayne H. Olson, Minneapolis, for respondent.

J.D. Jackson, Juan C. Basombrio, Dorsey & Whitney, Minneapolis, for appellant.

Considered and decided by WOZNIAK, C.J., and FOLEY and SCHULTZ,* JJ.

* Acting as judge of the Court of Appeals by ap-

## OPINION

WOZNIAK, Chief Judge.

General Mills, Inc. appeals the trial court's ruling that the ticket purchase agreement it entered into with the Metropolitan Sports Facilities Commission continues in effect following the repeal of Minn. Stat. § 473.568 (1982). General Mills asserts that the existence of section 473.568 was a condition precedent for its obligations to arise and that the contract's repeal provision could not grant the legislature sole power to bind it, a private entity, to remain a party to the contract. General Mills also asserts that the repeal of section 473.568 frustrated the essential purpose of the contract. We disagree and affirm.

## FACTS

In 1977 the legislature passed the Metropolitan Sports Facilities Act, Minn.Stat. § 473.551–.595 (1978), creating the Metropolitan Sports Facilities Commission (Commission) to build and operate what is now the Hubert H. Humphrey Metrodome (Metrodome) in Minneapolis.

The legislature's concerns went beyond the people who could attend professional baseball, football, or soccer games at a new, publicly-provided sports facility. The legislature wanted Minnesotans who could not attend the games in person because of financial or other reasons to be able to watch them on television. To that end, it prohibited any major league professional team tenant of the sports facility from participating in a league television contract that would prevent the telecast in Minnesota of a game played at the sports facility if (1) the game were to be telecast elsewhere, and (2) 90 percent of the tickets for the game available 120 hours before the game had been sold 72 hours before the game. Minn.Stat. § 473.568 (1978).

However, the National Football League (NFL), then and now, prohibits local telecast except when 100 percent of the tickets to a home game have been sold 72 hours before the game. Thus, in 1979 it appeared unlikely that a major league profes-

sional football team would sign a use agreement to play at the new sports facility planned by the Commission.

To enable the Commission to enter into a use agreement with a professional football team and go forward with the new sports facility, the legislature developed an approach assuring that all Minnesotans could watch the professional football team's home games on television when 90 percent of the tickets had been sold. The legislature added a precondition to building the new sports facility by mandating that the Commission enter into a 20–year agreement with a last-resort ticket purchaser requiring the purchase of all unsold tickets to a professional football game 72 hours before the game whenever more than 90 percent of the tickets had been sold 120 hours before the game. Minn.Stat. § 473.581(3)(m) (Supp.1979). Such an agreement would ensure that a game otherwise only 90 percent sold out would be telecast in all of Minnesota despite the NFL's 100 percent sellout policy.

The legislature provided such an agreement would "free the professional football organization [contracting to use the sports facility] from the prohibition otherwise imposed on it by section 473.568." *Id.*

On August 21, 1979, General Mills entered into a 20–year ticket purchase agreement with the Commission which is the subject of this litigation. The agreement states:

[I]n order to satisfy the requirements of section 473.568 * * * and of section 473.-581, subd. 3(m) * * * the parties agree as follows:

1. This Agreement * * * shall be effective * * * provided, however, this Agreement shall not be effective and General Mills shall have no further purchase commitments in the event that Section 473.568 is finally determined to be unconstitutional and void, or * * * is otherwise ineffective except in the case of a repeal thereof based solely upon the continued effectiveness of this Agreement.

The agreement limits General Mills' total obligation to $1.5 million for the purchase of tickets during the 20–year life of the agreement. It further provides that General Mills receives convenient access for its shuttle buses between its facilities and the Metrodome, and one minute of free commercial advertising on the Metrodome scoreboard during each Vikings home game.

General Mills also entered into agreements with the Vikings giving General Mills preferential treatment in the purchase of Vikings tickets and possible Super Bowl tickets. General Mills also received special consideration in the selection of "skydome" suites, and the Vikings agreed to share in the ticket purchase costs incurred by General Mills in its agreement with the Commission.

The ticket purchase agreement satisfied the terms of Minn.Stat. § 473.581, subd. 3(m), thus allowing the stadium bonds to be issued and for the Metrodome to be built. The Metrodome opened for use in 1982.

In late 1983, the Vikings and others lobbied for a repeal of section 473.568 because the NFL would not consider the possibility of having a Super Bowl in Minnesota without such a repeal.

On May 2, 1984, the legislature repealed section 473.568 as follows:

Minnesota Statutes 1982, section 473.568, is repealed. This repeal is based solely upon the continued effectiveness of the agreement or agreements entered into by the Metropolitan Sports Facilities Commission and the purchaser or purchasers of tickets * * *. Such agreements shall remain in effect throughout their terms * * *.

1984 Minn.Laws ch. 607, § 2. The legislature also amended section 473.581, subd. 3(m), deleting all references to section 473.-568. 1984 Minn.Laws ch. 607, § 1.

Prior to the repeal, General Mills sent a letter dated February 27, 1984, to the Vikings' lawyers, noting that they "remained dubious that the statute can be repealed without voiding the agreement." Aside from this equivocal statement, there was no evidence before the trial court of pre-repeal statements by General Mills as to the effects of such a repeal.

On June 13, 1984, General Mills' general counsel wrote the Commission, stating that since section 473.568 was repealed, there is simply no statute in existence which would serve as the basis for determining whether or not the Vikings can or cannot comply with the provisions thereof, thus implying that the repeal nullified the contract.

On February 25, 1985, the Commission notified General Mills that it felt the agreement was still in effect. More than two and a half years later, on November 18, 1987, General Mills responded, confirming, as stated in the Commission letter of February 1985, that there had been no anticipatory breach, notwithstanding the repeal of section 473.568.

It was undisputed that after the repeal, General Mills continued to receive the one minute of advertising and shuttle bus access through the 1988–89 football season, benefits due them under the agreement.

Prior to the 1988 football season, General Mills was not called upon to purchase tickets under the agreement; all Vikings home games were sold out 72 hours before game time. Prior to the first regular season game in 1988, the Commission learned that more than 90 percent of the tickets had been sold, but that some tickets would remain unsold 72 hours before game time. By the 72–hour deadline, Red Lobster, Inc., a wholly owned subsidiary of General Mills, purchased the remaining tickets and the game was telecast locally. General Mills asserted that it purchased the tickets voluntarily and not pursuant to the agreement. After purchasing those tickets, General Mills had the Commission make changes in the one minute of advertising shown at Vikings home games.

The issue of purchasing unsold tickets did not arise again until the first home game of the 1989–90 season when, again, more than 90 percent of the tickets had been sold and it was unlikely that the remaining tickets would be sold by the 72–hour deadline. The trial court found that General Mills may have helped to purchase those tickets. The same problem surfaced again prior to the second home game of the 1989–90 season. General Mills eventually stated it would not buy the remaining tickets and the Commission commenced this lawsuit to enforce the obligations under the agreement.

The trial court ruled that the agreement was still valid and enforceable.

## ISSUES

1. Was the existence of Minn.Stat. § 473.568 a condition precedent to the performance of General Mills' contractual obligations which was prevented by the repeal of section 473.568?

2. Did the agreement's repeal provision grant the legislature powers it could not constitutionally assume by itself?

3. Did General Mills waive its objections to the continuing effect of the agreement by continuing to accept the benefits of the agreement after the repeal of section 473.-568?

4. Did the repeal of section 473.568 frustrate the essential purpose of the agreement?

## ANALYSIS

The issues appealed by GMI raise purely legal questions and, as such, this court is not bound by the decision of the lower court. *First Trust Co., Inc. v. Leibman,* 445 N.W.2d 547, 549 (Minn.1989).

1. A condition precedent calls for the occurrence of an event before the contract becomes operative. An obligation then becomes dependent upon the performance or occurrence. *Lake Company v. Molan,* 269 Minn. 490, 498–99, 131 N.W.2d 734, 740 (1964); *Aslakson v. Home Savings Association,* 416 N.W.2d 786, 789 (Minn.App.1987).

General Mills claims that the inability of the Vikings to comply with section 473.568 is a condition precedent to General Mills' obligation to purchase tickets. They assert that the repeal of section 473.568 means that this condition precedent cannot exist and therefore the obligation cannot arise.

This argument ignores the fact that the agreement clearly contemplated and pro-

vided for a conditional repeal of section 473.568. Given a repeal by the legislature that complied with the repeal provision in the agreement, it would be illogical to hold that the existence of section 473.568 was a condition precedent.

The agreement also states that

if the professional football organization cannot comply with Minnesota Statutes, 1978, section 473.568 * * * Purchaser * * * will purchase or guarantee the purchase of all such tickets which remain unsold.

The Commission argues that the reference to section 473.568 of the 1978 statutes is merely an incorporation by reference of the "more than 90 percent, less than 100 percent tickets sold" circumstances set forth in Minnesota Statutes *1978*, section 473.-568.

■ The trial court held, and we affirm, that absent any contrary indication, the laws in existence at the time a contract is executed are presumed by the parties to be part of the contract. *Indianhead Truck Line, Inc. v. Hvidsten Transport, Inc.*, 268 Minn. 176, 184, 128 N.W.2d 334, 341 (1964); *William Lindeke Land Co. v. Kalman*, 190 Minn. 601, 607, 252 N.W. 650, 653 (1934); *Career Resources, Inc. v. Pearson Candy*, 435 N.W.2d 114, 116 (Minn.App. 1989). The repeal of section 473.568 thus does not change the conditions necessary to trigger the purchase obligations of General Mills.

■ 2. The agreement contains a condition subsequent providing for its termination "if section 473.568 is * * * ineffective except in the case of a repeal thereof based solely on the continued effectiveness of this agreement."

General Mills argues that the condition subsequent did occur by virtue of the first sentence of the repealer passed by the legislature, stating "Minnesota Statutes, 1982, section 473.568 is repealed." 1984 Minn. Laws ch. 607, § 2. General Mills asserts that the second sentence of the repealer is meaningless and without effect. It states:

This repeal is based solely upon the continued effectiveness of the agreement or agreements entered into by the Metropol-

itan Sports Commission and the purchaser or purchasers of tickets * * *.
*Id.*

General Mills argues that the legislature cannot unconditionally repeal a statute and then set a condition on that repeal, citing *Springborg v. Wilson & Co.*, 255 Minn. 119, 95 N.W.2d 598, 604 (Minn.1959). *Springborg*, however, rejected a party's attempt to construe an unambiguous section of a workers' compensation law based on the intent underlying another section of those laws. *Id.* Here, the first and second sentences of the repealer are part and parcel of one section of law.

■ General Mills claims that chapter 607 violates the one-subject, expressed-in-title requirement of article IV, § 17 of the Minnesota Constitution. It is clear that the title of the repealer, reading "[a]n act relating to regulated industries; changing conditions that regulate the telecast of games at metropolitan sports facilities," embraces only one subject, the means by which the public is assured that home football games played at the public sports facility will be telecast throughout Minnesota. That subject is expressed in the title. *See Blanch v. Suburban Hennepin Regional Park District*, 449 N.W.2d 150, 154–55 (Minn.1989) (single-subject mandate of article IV, § 17, is not violated if the act embraces one general subject). There is no requirement that every detail of the law be contained in the title.

■ More broadly, General Mills argues that the agreement's repeal provision granted the legislature the power to continue to bind the parties to a private contract, a power it would not otherwise constitutionally be able to exercise. They cite no cases or sections of our constitution to support this argument.

We reject this contention. General Mills and the Commission, two sophisticated parties, carefully defined and limited terms of a repeal of section 473.568 that would be a condition subsequent that terminates the agreement. That condition did not occur when the legislature repealed section 473.-568 based solely on the continued effective-

ness of the agreement. Rather than granting the legislature a power to bind them, the parties exercised their constitutionally-guaranteed liberty to contract, and agreed not to allow this exact conditional repeal to terminate the agreement. *See Minnesota Wheat Growers CO–OP Marketing Association v. Radke,* 163 Minn. 403, 407, 204 N.W. 314, 315 (1925); *Williams v. Evans,* 139 Minn. 32, 38, 165 N.W. 495 (1917); U.S. Const. amend. XIV; *see also AFSCME Councils 6, 14, 65 and 96 v. Sundquist,* 338 N.W.2d 560, 574 (Minn.1983). We hold that the legislature was not granted any power by the parties, who merely contracted to continue their agreement unless the legislature acted in a certain manner, which it did not.

■ 3. Despite its objections to the continuation of the agreement after the repeal of section 473.568 in May 1984, General Mills continued to accept the benefits of the agreement. They admit to receiving one minute of advertising at each Vikings home game for at least four years after the repeal. They also made it clear that they were not anticipatorily breaching the agreement when they wrote to the Commission on this subject in November 1987. It is our opinion that there was evidence from which a court could conclude that General Mills waived its right to terminate its obligations under the agreement by continuing to treat the agreement as effective. *See Kennedy v. Hasse,* 262 Minn. 155, 160–61, 114 N.W.2d 82, 86 (1962); *Gaertner v. Rees,* 259 Minn. 299, 303, 107 N.W.2d 365, 368 (1961); *Malmquist v. Peterson,* 149 Minn. 223, 226, 183 N.W. 138, 139 (1921); *Creative Communications Consultants, Inc. v. Gaylord,* 403 N.W.2d 654, 657 (Minn.App.1987); *Old Mill Printers v. Kruse,* 392 N.W.2d 621, 624 (Minn.App. 1986).

■ 4. Finally, General Mills contends that the repeal of section 473.568 frustrated the purpose of the agreement. Frustration of purpose will excuse contract performance if three conditions are met: "(1) The party's principal purpose in making the contract is frustrated; (2) without that party's fault; (3) by the occurrence of an event, the nonoccurrence of which was a basic assumption on which the contract was made." *National Recruiters v. Toro Co.,* 343 N.W.2d 704, 707 (Minn.App.1984) (citation omitted).

It is undisputed that the Commission entered into the contract for the purpose of assuring the taxpaying citizens of our state local telecast of Vikings games played at the Metrodome. That same purpose appears in the title of the 1984 repealer of section 473.568 and in the texts of sections 473.568 and 473.581, subd. 3(m); General Mills alleges it entered the agreement in order to satisfy the requirements of section 473.568 and section 473.581, subd. 3(m). The trial court noted that to comply with the requirements of those statutes, they had to enter into a 20–year agreement, a prerequisite for the Metrodome bonds to be issued. *See* Minn.Stat. § 473.581, subd. 3(m).

Even assuming arguendo that General Mills' purpose has been frustrated, the cause of the frustration—the repeal of section 473.568—is an event clearly contemplated by the parties as expressed in the agreement. Therefore, the doctrine of frustration of purpose is not applicable here.

## DECISION

The trial court did not err in its determination that the ticket purchase agreement between General Mills, Inc. and the Metropolitan Sports Facilities Commission remains valid and enforceable and was not terminated by the repeal of Minn.Stat. § 473.568 (1982).

Affirmed.

FOLEY, Judge (dissenting).

I respectfully dissent. In 1984 the legislature repealed Minn.Stat. § 473.568.

Minnesota Statutes 1982, section 473.568, is repealed. This repeal is based solely upon the continued effectiveness of the agreement * * * entered into by the Metropolitan Sports Facilities Commission and the purchaser * * * of tickets. Such

agreements shall remain in effect throughout their terms * * *. 1984 Minn.Laws ch. 607, § 2. The repeal's conditional language is an attempt by the legislature to force a contractual position on both the Commission and General Mills.

Because the Commission is a government agency, the legislature may properly control the Commission's contractual obligations. General Mills, however, is a private corporation. It may enter, modify or breach contracts as it chooses. A private party's freedom to contract is protected by the due process clauses of the Minnesota and United States Constitutions. *State v. International Harvester Co.*, 241 Minn. 367, 372, 63 N.W.2d 547, 551–52 (1954). The legislature may not interfere with freedom of contract unless it is necessary to invoke the state's police power to protect the public interest. *Id.; see Berman v. Parker*, 348 U.S. 26, 32, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954) (explanation of the state's police power).

Here, there are no police power issues. The legislature's attempted enforcement of the ticket purchase agreement is not necessary to protect the public interest and, thus, interferes with freedom of contract in violation of General Mills' due process rights. Representative Paul Ogren acknowledged this problem during hearings on the proposed repeal before the House Committee on Regulated Industries.

Representative Ogren: Mr. Chairman, Representative Jacobs, first of all the state cannot force General Mills to maintain that contract. Under no circumstance, it doesn't matter how you word this law, if they want to back out they can back out.

[Unidentified]: The language [in the repealer] does not mention General Mills.

Representative Ogren: Absolutely, we do not. Also, everything after the middle of the second line where it says the section is repealed is nonlegal language, is not binding in any sense.

Hearing on H.F. 1501 Before the Committee on Regulated Industries (Feb. 20, 1984). I fully concur with Representative Ogren's remarks.

The legislature cannot force General Mills to continue the contract absent General Mills' consent. Even if there is a public interest in televising football games, the legislature's interference is unnecessary to protect that interest. If General Mills consents to continue the contract and then breaches it, however, it will be subject to civil liability in court.

The legislature's attempt to control General Mills' contractual obligations under the ticket purchase agreement also offends separation of powers principles. The conditional repeal required a legislative interpretation of the following language in the agreement:

1. This Agreement * * * shall not be effective and General Mills shall have no further purchase commitments in the event Section 473.568 is finally determined * * * to be unconstitutional and void, or * * * is otherwise ineffective except in the case of a repeal thereof based solely upon the continued effectiveness of this Agreement.

General Mills argued to the trial court that the agreement's repeal reference is ambiguous. General Mills offered extrinsic evidence supporting an interpretation that General Mills' consent was necessary to prevent the agreement's termination upon repeal of Minn.Stat. § 473.568.

Whether the agreement's repeal reference is ambiguous and whether General Mills' consent was necessary for the continued effectiveness of the agreement are matters of contract law. Resolution of these issues is the judiciary's function. The legislature exceeded its authority when it interpreted the agreement's repeal reference as not requiring General Mills' consent to the continued effectiveness of the agreement upon repeal of Minn.Stat. § 473.568.

I would find the repeal reference ambiguous.

A contract is ambiguous if it is susceptible to more than one interpretation based on its language alone. * * * The initial question of whether a contract is ambiguous is a question of law to be decided by the trial court, and therefore

this court on appeal is not bound by the trial court's determination.

*Lamb Plumbing & Heating Co. v. Kraus-Anderson of Minneapolis, Inc.*, 296 N.W.2d 859, 862 (Minn.1980) (citations omitted). Here, the repeal reference can be interpreted to either require General Mills' consent, or permit the legislature to dictate the agreement's continued effectiveness upon repeal.

If a contract is ambiguous, extrinsic evidence is admissible to aid in construction. *Nord v. Herreid*, 305 N.W.2d 337, 340 (Minn.1981). If "the extrinsic evidence is conclusive and undisputed and renders the meaning of the contract clear," construction is a question of law. *Town & Country Shopping Center v. Swenson Furniture Co.*, 261 Minn. 100, 104, 110 N.W.2d 525, 528 (1961). Here, General Mills offered extrinsic evidence that General Mills' understanding at the time of contract formation was its consent was required to continue the agreement upon repeal of Minn.Stat. § 473.568. No other evidence was offered.

I would hold a conditional repeal of Minn. Stat. § 473.568 is unconstitutional because it violates both freedom of contract and separation of powers principles. I would also reverse the trial court's finding that the repeal reference is unambiguous and direct it to find General Mills' consent is necessary for the agreement's continued effectiveness upon repeal.