IN RE PETITION FOR CONSTRUCTION OF LATERAL TO
CONNECT WITH JUDICIAL DITCH NO. 7,
MARTIN AND FARIBAULT COUNTIES.
JAMES F. SMITH AND OTHERS v. ADOLPH F. LAUE
AND OTHERS.

99 N. W. (2d) 63.

October 23, 1959—No. 37,648.

*Putnam & Spencer* and *Rector H. Putnam,* for appellants.
*Edman & Edman* and *A. T. Edman,* for respondents.

KNUTSON, JUSTICE.

Appeal from an order of the district court.

The only legal issue raised on this appeal is: In a proceeding for the construction of a lateral to a public ditch running into two counties, where the lateral is designed to drain lands lying only in one county, does jurisdiction lie with the district court or with the county board?

Appellants assign as error that the trial court erred in dismissing the

petition on the grounds that the district court is without jurisdiction to establish a lateral in this proceeding.

The statement of facts as outlined by both parties in their briefs is as follows: Judicial Ditch No. 7 of Martin and Faribault Counties runs into two counties, Martin and Faribault. The present petition is for the construction of a lateral to drain certain lands in Faribault County into the judicial ditch. Proceedings leading up to preliminary hearing were held. After the hearing the court dismissed the petition and stated in its order:

"It appearing to the Court that all of the land in Minnesota to be drained by the proposed lateral is situated in Faribault County and that the County Board of Faribault County, rather than the District Court, has jurisdiction of the proceedings,

"It is ordered that the petition herein be, and the same hereby is, in all things, dismissed."

This is the second time that the precise facts in this controversy have been before this court. In In re Judicial Ditch No. 7, Martin and Faribault Counties, 238 Minn. 165, 56 N. W. (2d) 435, 57 N. W. (2d) 29, filed December 19, 1952, we held that under the then existing statute, M. S. A. 1949, § 106.521, the county board of Faribault County was without jurisdiction and that the sole jurisdiction lay with the district court. At that time the pertinent portion of § 106.521 read as follows:

"Persons owning property in the vicinity of an existing public drainage system may petition for a lateral or a lateral system connecting such lands with the drainage system. * * * If the lands *affected by* the lateral are situated in one county, the petition shall be filed with the auditor. If such lands extend into two or more counties, the petition shall be filed with the clerk." (Italics supplied.)

By L. 1953, c. 531, the legislature changed a portion of the pertinent part of the statute quoted above to read "If the lands to be *drained by* the lateral are situated in one county" instead of "If the lands *affected by* the lateral are situated in one county." (Italics supplied.)

It is appellants' contention that the 1953 act was simply a clarification and was not intended to change the effect of the decision of

this court in In re Judicial Ditch No. 7, Martin and Faribault Counties, *supra.* On the other hand, respondents claim that the above case was decided December 19, 1952, and that subsequently, in the legislative session of 1953, the representative from Faribault County introduced the bill that amended § 106.521. The respondents argue that such a bill would not have been introduced unless it was intended that the meaning of the statute should be changed, as it would have been pointless to amend the statute to give it the very same meaning that our decision of December 19, 1952, had given it.

The trial court in its memorandum took the position that under the 1953 amendment the county board of Faribault County rather than the district court has jurisdiction of the proceedings; that it is unquestioned that the court was dealing with a lateral in the instant case; and that when the 1953 legislature changed the wording of § 106.521 to refer to lands to read "drained by" the lateral rather than "affected by" the lateral the language was unmistakable as to what was meant. The memorandum went on to state that while water emptied into the main ditch by a lateral could "affect" the ditch system in several counties below its juncture with the lateral it is possible that the lateral would "drain" lands situated in only one county and that the land to be drained here is near the center of Faribault County laterally.

■ We are confronted here primarily with the question of statutory construction as to what the legislature intended when it changed the language from lands "affected by" the lateral to lands to be "drained by" the lateral. Respondents contend that lands to be drained can only mean lands to be made dry by causing the water to flow off into ditches, channels, etc.

Statutory construction lies wholly in the domain of ambiguity—if there is no ambiguity there is no need for construction. Where the words used in a statute are clear and free from ambiguity the language used by the legislature must be given its ordinary and usual meaning. Springborg v. Wilson & Co. Inc. 255 Minn. 119, 95 N. W. (2d) 598.

■ It seems clear to us in the instant case that when the legislature by the 1953 amendment to § 106.521 changed the wording from lands "affected by" the lateral to lands to be "drained by" the lateral that

it meant what it said, namely, that the lands must be actually drained rather than merely affected by the lateral.

Here we have a situation where it appeared to the trial court that all of the land in Minnesota to be drained by the proposed lateral is situated in Faribault County and that the county board of that county has jurisdiction. It is our opinion that the trial court is correct and should be affirmed.

Affirmed.