# EMILY I. GREEAR v. BENJAMIN A. PAUST AND OTHERS.[1]

August 3, 1934.

No. 29,699.

[1]Reported in 256 N. W. 190.

288

*Arthur LeSueur, George T. Havel,* and *Malmberg & Nelson,* for appellant.

*W. Yale Smiley,* for respondent Benjamin A. Paust.

*George A. Lewis* and *J. J. Truax,* for respondent Alvin Solberg.

*HOLT, Justice.*

Plaintiff appeals from the order denying her a new trial.

The action is to recover damages for fraud and misrepresentation inducing plaintiff to trade Canadian lands for the Mayfair Apartments in Minneapolis. There were several defendants, and conspiracy to defraud was alleged; but before the trial closed the action was dismissed as to all except defendants Paust and Solberg, and no question is raised as to the court's action in that respect. The title to the Canadian lands had originally been in plaintiff's husband, but at the time of this transaction plaintiff was the owner and her husband held a power of attorney from her to sell, convey, and deal with them as completely as she herself could do. The husband acted for her in the exchange for the Mayfair Apartments. He, as well as these defendants, was an experienced real estate trader and dealer. Paust acquired the Mayfair Apartments from one Huston on November 3, 1930. The fee owners thereof were Madsen & Watson, Inc., from which Huston had a contract for deed subject to a $95,000 mortgage. Under the contract the vendee was to make payments of $1,500 each month until the balance of $141,859.67 of the purchase price was paid. Huston had assigned this contract in blank to Paust. The contract contained this clause, from which plaintiff derives one of the main arguments for a new trial:

"It is further agreed, that this contract cannot be assigned without the written consent of the party of the first part [Madsen & Watson, Inc.] indorsed hereon, but it is agreed that such written consent will be given by said first party in the event that said second party procures a party as purchaser who is morally and financially responsible. First party agrees not to charge a commission or bonus if contract is transferred."

The vendor had not indorsed a written consent either to the assignment to Paust nor to plaintiff. Plaintiff's Canadian lands were subject to a $22,000 mortgage, and she had sold them under a contract for deed to Moose Mountain Fur Ranches, Ltd. Plaintiff in the fall of 1930 had had agreements with one Egelund through the agency of defendant Solberg, and later direct with Solberg for the sale or exchange of her said lands, but the agreements were canceled or abandoned. Early in November, 1930, through Solberg, plaintiff's husband, Mr. Greear, was brought into negotiation with Paust for the exchange of these lands for the Mayfair Apartments, and on November 12, 1930, a contract for such exchange was executed. Under that contract abstracts were to be furnished within two days and the transfers made within two days thereafter. Abstracts were furnished. Paust was to pay $7,500 to plaintiff in the exchange. On November 14 Mr. Greear refused to complete the deal unless more money was paid, and the next day Paust agreed to pay $1,250 more; and the deal was thereupon closed, the money paid, the papers delivered, and possession taken of the apartment. In March, 1931, Madsen & Watson, Inc. canceled the contract for the sale of the Mayfair Apartments for nonpayment of the monthly instalments. Thereafter this action was instituted.

The complaint is lengthy. It charges conspiracy to defraud plaintiff by misrepresenting the income of the Mayfair Apartments to be from $10,000 to $12,000 more a year than it actually was; by representing that the consent of Madsen & Watson, Inc. had been obtained to the transfer of the Huston contract to plaintiff; by the false promise made without intention of performing it that Paust would obtain a reduction of the monthly payments of the

contract from $1,500 a month to $1,250 a month. The verdict was for the defendants. The assignments of error are: The verdict is not justified by the evidence; error in respect to the rulings on four items of evidence; error in certain instructions; and error in allowing defendants to amend their answer during the trial. No further reference to the last mentioned assignment of error will be made, for the court obviously acted within proper judicial discretion, there being no suggestion that plaintiff was unprepared to meet the issues presented by the amendment.

The chief argument is directed to the proposition that the verdict is not justified by the evidence. As to the alleged misrepresentation of the income of Mayfair Apartments, the one apparently of real substance if established, there is no contention that the verdict is not justified. Nor could there well be if the jury accepted the testimony of defendants that Greear investigated the income personally and told Paust in the beginning of negotiations that he, Greear, knew more about the income or revenue of Mayfair Apartments than Paust. But plaintiff urges that Paust had agreed to give a good and marketable title to Mayfair Apartments, that such could only be transferred with the written consent of the vendor, Madsen & Watson, Inc. indorsed on the Huston contract assigned to her that defendants represented that the instruments delivered to plaintiff transferred good title and that the consent of the vendor had been obtained to the assignment of the Huston contract to plaintiff. On this issue the jury could find from the evidence that Greear, as well as Paust and Solberg, was a keen, experienced real estate dealer and trader, each having been in that business for over 20 years. The contract of November 12, 1930, for the exchange between Paust and plaintiff, provided:

"That each party hereto shall deliver to the other party, within two days from the date hereof, an officially certified abstract of title, continued to the date hereof, of the land he hereby agrees to convey; that each party shall have two days thereafter to examine said titles and to perform this contract; that, in case the title to any of said land shall be found to be not good and marketable, the

owner thereof shall have five days after notice, in writing, of such defects in such title to him by the other party to perfect the same and make it good and marketable, at his own expense, and that the time for the performance of this contract shall be extended for such time; and that, in case any such defective title cannot be made good and marketable within such time, this contract shall become void and of no effect, and that in such case none of said parties hereto shall be liable for damages hereunder; and that time shall be of the essence of this agreement."

With this contract in his hands Greear admits the receipt of the abstract to Mayfair Apartments, and he does not deny that when the contract with Paust was signed he knew the terms of the Huston contract to require the consent in writing of Madsen & Watson, Inc. indorsed thereon to any assignment thereof. Greear certainly knew on the 15th of November, when the transaction was closed, the money in exchange was paid, and the Huston contract together with the assignment thereof to plaintiff was delivered to him, that Madsen & Watson, Inc. had not indorsed a written consent to its assignment to plaintiff. There is no pretense of any effort to mislead Greear into the belief that such consent was not needed or to conceal from him that the Huston contract provided for it. However, Greear maintained in his testimony that Paust went across the street to Madsen & Watson's office to obtain such consent and that Paust returned and represented that he had obtained it. Defendant testified on the other hand that there never was anything said during the whole negotiation regarding the procuring of the vendor's consent to the assignment. Surely the jury were justified in finding in favor of defendants on this proposition. In so doing, consideration could be given to the fact that, on the 14th, Greear threatened not to close the transaction unless Paust paid more money, and that on the next day the parties compromised, Paust agreeing to pay $1,250 additional, and the papers were then delivered, Paust's testimony being that each accepted the same as they were. No notice was ever given by plaintiff of any defect in the title as provided in her contract with Paust. She took possession of the May-

fair Apartments. She made one monthly payment of $1,500. We think there can be no fair doubt that on the alleged fraud and misrepresentation respecting the consent of the vendor to the assignment of the Huston contract to plaintiff the evidence justifies the verdict in favor of defendants.

The only other issue of fraud and misrepresentation included in the verdict is the one that Paust represented that he would obtain a temporary reduction of the monthly payments of the Huston contract from $1,500 to $1,250; but that this was false. Paust testified that on the 15th of November, before closing the deal, he, at Greear's request, went across the street to Madsen & Watson's office to ascertain whether the monthly payments on the Huston contract could be temporarily reduced; that the officers of the vendor, Mr. Madsen and Mr. Watson, were both present and that they agreed to make such reduction in the form contained in exhibit O, which Paust wrote and delivered to Greear on his return from the office of Madsen & Watson, Inc. The recollection of Mr. Madsen and Mr. Watson is hazy about this interview. They testified that there was talk of such reduction, but they did not think it was agreed to. Considering that Paust immediately reduced to writing what he thought was the substance of the agreement and that the officers of Madsen & Watson, Inc. soon lost all interest in plaintiff's transaction, the jury were well justified in finding with Paust on that issue. The material part of exhibit O is:

"In consideration of our closing our transaction at once, I agree to immediately make the necessary arrangement with Madsen & Watson, Inc. so that the monthly payments due them on the Mayfair contract will be reduced $250.00 per month for the next eight months beginning with the payment due in December, 1930. In other words, you will pay $1,250.00 per month for the next eight months instead of $1,500.00 per month. After the eight months, it is understood that you will increase your payments to $1,625.00 per month until you have made up the difference of $250.00 for the eight months reduction. You also agree to make out your checks for your payments on your furniture to the New England and to

Boutell when they are due but to turn them over to Madsen & Watson, Inc. so that they can deliver them to the proper parties.

"Trusting that this arrangement is satisfactory, I am,·

"Very truly yours."

The contents of this letter must have appealed to Greear, as it did to the jury, as embodying the modification that Madsen and Watson, the officers of the vendor, agreed to make in the Huston contract in the monthly payments. It cannot be successfully claimed that the evidence does not support the issue embraced in the verdict that Paust falsely promised to make an agreement with the vendor to reduce temporarily the monthly payments in the Huston contract with no intention to fulfill the promise. The evidence is persuasive that he made such agreement.

All that plaintiff says in the brief upon the assignments of error relating to the rulings admitting or excluding evidence is this:

"If a new trial is granted these errors may not occur again, and for that reason we shall not take the time of this court to argue the same in detail."

This indicates, perhaps sufficiently, that plaintiff has no faith in the merits of any of the assignments of error referred to. We have, however, examined them and think the court rightly admitted defendants' exhibits 1, 2, and 11, as bearing upon defendant Solberg's agency. Furthermore, in folio 1394 of the printed record it is stated:

"Defendants' exhibits 1 to 22 are omitted as having no bearing on the merits of this case or the legal questions involved."

Plaintiff's exhibit T, the notice of cancellation of the Huston contract, was properly stricken, as the contents thereof were not proper evidence against either defendant. There was no dispute of the fact that the contract was canceled for default after plaintiff took possession of the Mayfair Apartments. Plaintiff's exhibit E, attached to a deposition (being a letter from Solberg to an officer of Moose Mountain Fur Ranches, dated September 30, 1930) contains nothing impeaching or contradictory of Solberg's testimony herein,

nor are there any admissions against interest so as to make it admissible as against Solberg. Planly it was not admissible against Paust, who then had no knowledge of plaintiff or her lands. The exhibits of plaintiff attached to depositions and marked exhibits F to and including Z-9 (letters from Solberg to the officers of Moose Mountain Fur Ranches, covering a long period of time both before and after the time of the deal here involved) were rightly excluded for the same reason that exhibit E was ruled out.

Error is assigned upon this part of the charge:

"The law in that connection is that a false representation is not actionable, does not form a basis of action, if made under such circumstances, and in relation to a subject matter that a person of the character and intelligence of the plaintiff would not ordinarily be deceived thereby. In other words, if you make false representations about a piece of property or land that a man was looking at, when he was standing right on the land and could see himself, that would not constitute fraud; because it would be negligence for a person to be deceived by representations when he could see by his own eyes that something else was the fact.

"Otherwise stated, the law in that connection is this, that in an action for relief on the ground of fraud the question is whether the representations were of such a character and made under such circumstances that they were reasonably calculated to deceive the plaintiff, and the diligence and prudence required of a plaintiff is such as may reasonably be expected of a person of the intelligence and character and business experience of the plaintiff. In order to determine whether or not the plaintiff did use in this case the diligence and prudence that he should have used, you may take into consideration his intelligence, his age, his experience, especially his experience in real estate transactions."

The court considered Mr. Greear as acting for plaintiff. It is true that one who has intentionally deceived another to his injury cannot make the defense that such other party ought not to have trusted him. Maxfield v. Schwartz, 45 Minn. 150, 47 N. W. 448, 10 L. R. A. 606; Erickson v. Fisher, 51 Minn. 300, 53 N. W. 638; Guy T. Bisbee

Co. v. Granite City Inv. Co. 159 Minn. 238, 199 N. W. 14. While the one who by misrepresentation has induced a party to enter into a disadvantageous deal may not escape when called to account by claiming that the injured party was negligent and should not have trusted the former, still it is for the injured party to prove that he made the deal in reliance upon the truthfulness of the representations. If his intelligence and experience in like transactions were such that the jury could conclude that he knew the representations made were not true, he did not rely thereon. A careful consideration of Kempf v. Ranger, 132 Minn. 64, 155 N. W. 1059, justifies the instruction assailed. And also, in respect to the alleged promissory misrepresentation, the instructions quoted were appropriate.

"So with a fraudulent promissory representation which is plainly contradicted by the undertaking or the stipulations in the written agreement. The promisee would then know that the promise was false, or could not be kept, if what was written was to have any effect, and consequently could not rely thereon." Nelson v. Berkner, 139 Minn. 301, 307, 166 N. W. 347, 349.

Mr. Greear knew from the Huston contract, and he does not deny it, that an assignment thereof required a written consent of the vendor indorsed thereon; yet he accepted the assignment without such consent.

The assignments of error are also directed against certain instructions given in the absence of counsel, when the jury, after some deliberation on the verdict, came into court and asked to be instructed as to the meaning of the phrase "good and marketable title" in the exchange contract. The point made, that there must be a new trial for the reason that counsel were not afforded the opportunity to be present, is not well taken. The proper practice is well stated in Anderson v. M. St. P. & S. S. M. Ry. Co. 146 Minn. 430, 179 N. W. 45, and the authorities therein cited are conclusive that the absence of the attorneys does not call for a new trial. After sufficiently explaining the meaning of the words which appeared to perplex the jury, the court, sensing that there was danger of confusing the cause of action, said:

"But I want to return again to what I said before about the nature of this action. This is an action, not for breach of contract, it is not an action for damages because it is claimed that Paust or Solberg, or either one, broke a contract and failed to convey a good or marketable title. The action is one for damages for fraudulent representations. * * *

"And there are also, in connection with that matter of fraudulent representation, the issues which I called to your attention yesterday, that is, whether or not there was a waiver by the plaintiff of the procurement of the assignment at the time the transaction was closed on the evening of November 15. Defendants claim at that time that, in consideration of the defendant Paust advancing $1,250 more, it was agreed that the papers would be transferred on both sides without any further investigation and both sides would take them 'as is,' as the expression is.

"There is also the further issue raised by the defendants, which I called your attention to yesterday, in reference to whether or not the plaintiff, by his acts and conduct after the transfer was made on November 15, whether or not he prevented Madsen & Watson from making such a transfer. It is claimed by Paust that he went to Madsen & Watson and they agreed to accept the plaintiff, Greear, as the assignee and make the consent, provided certain payments then in arrears were made, I think the December and January payments, some interest thereon and a small amount of costs; he claims that he told the plaintiff about this and that plaintiff did nothing."

At the beginning of the trial, after considerable discussion between court and counsel, plaintiff elected to base the cause of action upon the charge of fraud and not upon breach of the contract of exchange. Nor does plaintiff now recede from that election "except in so far as such breach of contract was a constituent element of the false representations set out in the complaint." In view of the course of the trial, and particularly in view of the evidence that notwithstanding the exchange contract contained the words "good and marketable title," the exchange was effected, the assignment from Huston to plaintiff was accepted, and the exchange money

was paid, both parties knowing and appreciating that Madsen & Watson, Inc., the vendor in the Huston contract, had not indorsed written consent to the assignment thereof to plaintiff, it would be a perversion of justice to allow a recovery on the ground of a breach of contract, especially when it quite clearly appears that, if plaintiff had continued to make the payments she started out to make, good and marketable title to the Mayfair Apartments would have been acquired.

A perusal of the record will satisfy an impartial mind that the case was well tried and all issues raised submitted in appropriate and adequate instructions. It should be remembered that the actors in this trade were keen and experienced dealers.

The order is affirmed.

