# FRANK M. GAERTNER AND ANOTHER v. DOUGLAS REES AND OTHERS.

107 N. W. (2d) 365.

January 20, 1961—No. 38,073.

*Stacker & Stacker* and *Joseph Mast,* for appellants.

*Faegre & Benson, Raymond Scallen,* and *Rodger L. Nordbye,* for respondents.

NELSON, JUSTICE.

This action involves the sale of a gas station originally owned by defendant Douglas Rees and transferred to the plaintiffs, Frank M. Gaertner and Cecil J. Brussell. Defendant Maxine E. Rees is the wife of Douglas Rees and defendant R. W. Farnsworth, Inc., is a corporation engaged in real estate sales and development of commercial and industrial properties.

During the period from June 9, 1955, through August 1955, R. W. Farnsworth, Inc., was the duly authorized agent of Douglas Rees to sell said real estate and the filling station being erected thereon. On June 9 R. W. Farnsworth, president of R. W. Farnsworth, Inc., wrote a letter to Gaertner, which said in part:

"The service station property about which you inquired recently at 4600 Minnehaha Avenue, Minneapolis, is back in on the market.

"* * * We are enclosing herewith a sketch of the lot itself showing the location of the proposed station.

"The present owner is under contract with Sinclair Refining Company to build them a station and they are under contract to him for a lease for 10 years at $265.00 per month. They have two options to extend the lease of 5 years each, at the same rental. The owner pays taxes on the building; lessee pays taxes on its own equipment, and most of the equipment for the service station is furnished by Sinclair. The owner also maintains the building except for damage caused by the lessee.

"We have secured approval from the North American Life & Casualty Company of a loan for $20,000.00 on the station which is to be erected

for Sinclair Refining Company on the southwest corner of Minnehaha Avenue and East 46th Street in Minneapolis. This loan is payable in 10 years, with monthly payments of $212.14.

"The property is offered at a price of $27,500.00. This would give a gross return of approximately 11½%. *We have no way of estimating the taxes accurately but the taxes for this year on the Socony Vacuum station at 4601 Minnehaha Avenue were $543.00, so we anticipate the taxes will be approximately the same on this location.* Insurance will run about $25.00 a year. Estimated possible upkeep and repairs would run around $100.00 a year which would still leave a net return of over $2,500.00, which would be between 8½ and 9% net." (Italics supplied.)

The letter further pointed out that with the loan payments plus taxes "there would be very little actual income during the life of the lease."

The negotiations between the parties continued until a sale was completed by transfer of title to plaintiffs during August 1955. The purchase price had been reduced to $27,000. The lease was examined by plaintiffs before the earnest money contract was signed. The structure was completed about October 1, 1955, and pursuant to a leasing agreement dated November 29, 1954, Sinclair Refining Company then commenced operation of the gasoline station.

The record indicates that the plaintiffs base their suit for rescission upon that portion of the letter of June 9, 1955, which refers to taxes. Nevertheless, on April 4, 1957, plaintiffs' attorneys wrote R. W. Farnsworth the following letter:

"Frank Gaertner has received the tax statements for the year 1956, payable this year and, much to his surprise, the total taxes on the four lots comprising this filling station are $1,099.27. He is doubly alarmed because in your original proposal of June 9, 1955, you estimated the taxes around $500 and you based your guess on the Socony-Vacuum station at 4601 Minnehaha Avenue. *Both Frank and myself realize that the best you could do at that time would be to estimate and we are not seeking to hold you responsible for anything, but it seems that there must be something radically wrong when the estimate is so far off.*

"We often go to the assessor and try to get some kind of an estimate before a structure is put up, maybe you did the same and could now call the assessor's attention to this fact.

"In all events, we would greatly appreciate your talking to the assessor and see if something did not go haywire in his calculation.

"Thanking you for anything you may be able to do in this connection, * * *." (Italics supplied.)

Plaintiffs' attorneys wrote defendant Douglas Rees on May 10, 1957, with reference to defective stucco work on the gasoline station and requested that Rees refer to his construction contract and advise them whether or not the alleged defect was structural or due to ordinary wear and tear. This letter makes no reference to taxes. A few days later Rees responded to the letter, and on May 28, 1957, plaintiff Gaertner wrote Rees as follows:

"In view of the recent development in the Sinclair Service station at 46th and Minnehaha, Mr. C. J. Brussell and myself feel that we prefer to be out of this deal. If you will kindly give this matter your prompt attention."

Thereafter, plaintiffs commenced this action seeking rescission of the sale and an accounting between the parties to restore the status quo, including in such accounting the reasonable value of plaintiffs' services performed in managing and caring for the property, or in the alternative, damages sustained by plaintiffs by reason of the alleged negligent representations of defendants. Defendants interposed in effect a general denial together with an affirmative defense of waiver or estoppel alleging that, prior to May 31, 1957, plaintiffs made no complaint or objection to the amount of taxes assessed against the premises. Plaintiffs had made no tender of rescission on the ground of misrepresentation as to taxes until so stating in their complaint, neither did they take any steps to secure abatement of taxes within the time allowed by law.

The trial court found that both plaintiffs and defendants were and are persons of capacity and experience in real estate investments including gasoline stations. The record is clear that there was no disparity in experience or acumen between the parties to the action in

such matters and that several months intervened before the plaintiffs determined to make the purchase. A reasonable inference would be that they looked into all matters including taxes and the existing lease on the property. Due to plaintiffs' careful approach they were able in the end to negotiate a lower price. It was reduced from $27,500 to $27,000, leaving a present investment of only $7,000 in cash, the remainder to be paid pursuant to the mortgage terms recited in the first proposal. In closing the transaction plaintiffs were represented by their regular attorneys, who had made a complete inspection of the contract, the lease, and the title. It is fair to infer, as did the court, that the plaintiffs knew what they were doing when they closed the deal at a lower price. In fact one of their attorneys freely stated in the letter to Farnsworth, April 4, 1957, that they realized that the best Mr. Farnsworth could do at the time in regard to taxes was to estimate and that they were not seeking to hold him responsible for anything.

That plaintiffs should attempt, for the first time, to rescind by this action on the ground of misrepresentation as to tax estimates is not impressive in the face of the earlier correspondence between the parties, most of which was incorporated into the record by stipulation at the trial. We see no alternative to adopting the trial court's determination that plaintiffs' evidence on the issue of misrepresentation regarding taxes (the only basis for their claimed right to a rescission) was weak and inconclusive. Not even Gaertner's letter dated May 28, 1957, mentions the tax estimate as one of the reasons plaintiffs would prefer to be out of the deal.

■ The rule appears to be well established that only a material breach of a contract or a substantial failure in its performance justifies a party thereto in rescinding. Heyn v. Braun, 239 Minn. 496, 59 N. W. (2d) 326; 4 Dunnell, Dig. (3 ed.) § 1808.

It is not every breach of contract which justifies rescission. The right to rescind must be exercised promptly upon discovery of the facts from which it arises for the reason that under the law it may be waived by continuing to treat the contract as a subsisting obligation. Cut Price Super Markets v. Kingpin Foods, Inc. 256 Minn. 339, 98 N. W. (2d) 257; Heyn v. Braun, *supra;* 4 Dunnell, Dig. (3 ed.) § 1808; 12 Am. Jur., Contracts, § 447.

■ Plaintiffs' challenge to the trial court's findings is limited to the following: (1) That the trial court erred when it found that the property in question was of a value not less than the amount for which it was purchased by the plaintiffs; and (2) that the trial court erred when it found "that the evidence does not fairly preponderate that such representation [regarding taxes] induced plaintiffs to purchase the property here involved, nor does the evidence fairly preponderate that the attempted rescission of such purchase by plaintiffs' letter of May 28, 1957 * * * was based upon said representation of taxes. That on the contrary such attempted rescission by plaintiffs was based, more likely, upon the * * * [complaint about stucco], which subject matter is not involved in this case. That it is more reasonable to conclude from the evidence, and the Court so concludes, that plaintiffs' claimed right of rescission on said tax representation came into being subsequent to plaintiffs' said letter of May 28, 1957, and not before."

We are bound to conclude that the two findings which are challenged rest on the premise that the representations made by defendants were not "material" to the sale of the property and upon a justifiable inference by the court that plaintiffs' claimed right to rescission on the ground of misrepresentation as to taxes came into being in their minds subsequent to plaintiff Gaertner's letter of May 27, 1957, and not before.

■ In findings which were not challenged, the court found: "That plaintiffs do not claim that such incorrect representation as to taxes was intentionally fraudulent but does assert such was due to either negligence or an honest mistake on the part of defendant Douglas Rees through his agent, defendant corporation. Aside from the fact that defendant corporation conceded it made the representation as to taxes on the Socony Vacuum station as claimed by plaintiff, no evidence was submitted reflecting how the mistake occurred."

There are no assignments by plaintiffs which raise any question as to the correctness of the trial court's conclusions of law. Findings and conclusions not assigned as error on appeal are deemed to be correct. See, In re Estate of Olson, 227 Minn. 289, 35 N. W. (2d) 439; Land O' Lakes Dairy Co. v. County of Wadena, 229 Minn. 263, 39 N. W. (2d) 164. Rule 52.01, Rules of Civil Procedure, provides in part:

"Findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

■ The legal question here is whether the findings of the trial court are manifestly and palpably contrary to the evidence as appellants claim.

The rule is well settled in this state that findings of fact made by the trial court will be disturbed only where the evidence, considered as a whole, does not reasonably support them. See, McLellan v. Stevens, 176 Minn. 419, 233 N. W. 770; S. Bader & Sons v. Gensler, 191 Minn. 571, 255 N. W. 97; Georgopolis v. George, 237 Minn. 176, 54 N. W. (2d) 137; Lehman v. Hansord Pontiac Co. Inc. 246 Minn. 1, 74 N. W. (2d) 305; 1 Dunnell, Dig. (3 ed.) § 411.

This court in the recent case of Hynan v. First Trust Co. 258 Minn. 118, 124, 103 N. W. (2d) 209, 213, said:

"* * * When an action is tried by a court without a jury its findings are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly contrary to the evidence."

See, also, Maust v. Maust, 222 Minn. 135, 23 N. W. (2d) 537; State v. Adams, 251 Minn. 521, 89 N. W. (2d) 661.

The plaintiffs cite three cases to support their position on this appeal, namely: Spiess v. Brandt, 230 Minn. 246, 41 N. W. (2d) 561, 27 A. L. R. (2d) 1; Lehman v. Hansord Pontiac Co. Inc. 246 Minn. 1, 74 N. W. (2d) 305; Clark v. Thorpe Bros. 117 Minn. 202, 135 N. W. 387.

These cases all involved disparity in business experience between the parties. In the Spiess and Lehman cases the trial courts' findings that the plaintiffs had been induced to enter into the contracts involved by fraudulent misrepresentations of the defendants were sustained on appeal. These cases do not apply in the instant case where the trial court found that plaintiffs were not deceived and did not in fact rely upon claimed misrepresentations of fact in purchasing the property.

■ Greear v. Paust, 192 Minn. 287, 256 N. W. 190, is illustrative of a situation where the negotiators involved were keen, experienced

real estate dealers, each having been in business for over 20 years. Plaintiff claimed fraudulent representation. Denial of a new trial was affirmed after a verdict for the defendants. In that case we said (192 Minn. 295, 256 N. W. 193):

"\* \* \* While the one who by misrepresentation has induced a party to enter into a disadvantageous deal may not escape when called to account by claiming that the injured party was negligent and should not have trusted the former, *still it is for the injured party to prove that he made the deal in reliance upon the truthfulness of the representations.* If his intelligence and experience in like transactions were such that the jury could conclude that he knew the representations made were not true, he did not rely thereon." (Italics supplied.)

■ A review of the evidence clearly demonstrates that the issues herein relate to facts only. The court having heard the evidence adduced and having found against the plaintiffs, the sole issue for us is whether the evidence sustains the findings of fact, conclusions of law, and the judgment. A careful review leads to the conclusion that it does.

Affirmed.