In the Matter of SENTRY DATA, INC., Debtor.

SENTRY DATA, INC., Plaintiff,

v.

CONTROL DATA CORPORATION, Defendant.

Bankruptcy No. 84 B 08848.
Adv. No. 87 A 01008.

United States Bankruptcy Court,
N.D. Illinois, E.D.

May 11, 1988.

George A. Vinyard, Jeffrey A. Schumacher, Bruce W. Boyd, Sachnoff, Weaver & Rubenstein, Ltd., David N. Missner, Schwartz, Cooper, Kolb & Gaynor Chartered, Chicago, Ill., for plaintiff Sentry Data, Inc.

Robert A. Pond, Mark S. Lieberman, John S. Delnero, Rosenthal & Schanfield, P.C., Chicago, Ill., for defendant Control Data Corp.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on cross motions for summary judgment filed by the debtor/plaintiff Sentry Data, Inc. ("Sentry") and by the defendant Control Data Corporation ("Control Data"). The issue is whether an agreement between the parties can be assigned by Control Data. The Court holds that the agreement can be assigned. For the reasons set forth herein, the Court, having considered all the pleadings, affidavits and exhibits filed, does hereby deny Sentry's motion for summary judgment and does hereby grant Control Data's motion for summary judgment.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these motions pursuant to 28 U.S.C. § 1334 and General Orders of the United States District Court for the Northern District of Illinois. The motions are core proceedings under 28 U.S.C. § 157(b)(2)(A), (E), (N), (O).

## II. FACTS AND BACKGROUND

Sentry filed this adversary proceeding against Control Data claiming that Control Data breached an agreement entered into between the two parties. Sentry seeks return of certain property from Control Data or alternatively the balance due under the agreement in order for title to the property to vest in Control Data.

The following is a statement of the material facts which are not in dispute: Sentry, the debtor-in-possession, filed a Chapter 11 petition on July 17, 1984. Sentry is in the business of creating and developing computerized hospital information and data processing systems ("Systems"), including a distributed data-based controller and various related software materials and programs which are designed to aid hospitals in patient registration, accounting and communication ("Proprietary Materials"). Sentry discussed with Control Data and others the possibility of licensing or selling the Systems and Proprietary Materials. On February 8, 1985, Sentry and Control Data entered into an "Agreement for License and Sale of Proprietary Materials" (the "Agreement"). The Court entered an Order approving the Agreement on February 15, 1985.[1] The Order found that the Agreement was negotiated between the parties for the exclusive license and ultimate sale of the Systems and Proprietary Materials; that the consideration to be paid was fair and the terms and conditions of the Agreement were reasonable.

The Agreement granted to Control Data "an exclusive, unrestricted, worldwide right and license ... to the Proprietary Materials...."[2] Pursuant to the Agreement, Control Data was to market the Systems to hospitals. Sentry was to receive a royalty for each System sold by Control Data. Title to the Systems and Proprietary Materials was to remain with Sentry until Control Data paid Sentry royalties in the aggregate amount of $4.25 million. Control Data paid to Sentry $1.5 million as a nonrefundable prepaid royalty. To date, Control Data has licensed only one System and has asserted that the Proprietary Materials are unmarketable.

Control Data seeks to assign the Agreement to the 3M Corporation ("3M"), to which Sentry has objected by filing this adversary proceeding.[3] The Agreement is

---

1. The Honorable Richard L. Merrick was originally assigned the case when it was filed in 1984. The Honorable Robert L. Eisen was assigned the case on October 29, 1984. Subsequently, the case was reassigned to the Honorable Robert E. Ginsberg on June 9, 1985. Thereafter, the case was reassigned to this Judge on February 2, 1988.

2. Paragraph one of the Agreement reads as follows:

   *Grant of Exclusive License.* Subject to the terms and conditions hereof, Sentry hereby grants to Control Data and Control Data hereby accepts an exclusive, unrestricted, worldwide right and license (the "License") to the Proprietary Materials described in Exhibit A and all other source code, object code, manuals, documents and other materials related to the Proprietary Materials. *The License shall include the exclusive right,* subject only to the prior licenses granted by Sentry listed in Exhibit B, *to use,* reproduce, *sell, distribute,* modify, convert, translate, adapt, perform, display, and prepare derivative work *and*

   *grant sublicenses* to do the same of all computer software source code, object code, manuals, documents and related materials listed on or related to the items referred to in Exhibit A. *The License shall also include the exclusive right to use the Proprietary Materials to* make or have made, use, *sell, distribute* and maintain distributed database controllers based on the information contained therein. The License shall include the right to use all ideas, concepts, know-how, techniques or trade secrets of Sentry which relate to any of the Proprietary Materials. *The License shall extend to* and *inure* to the benefit of *any Control Data subsidiary, distributor, agent or licensee that receives the Proprietary Materials* from Control Data *under agreements providing for the use or marketing* of such materials. (Emphasis added)

3. On May 29, 1987, Control Data and 3M entered into a contract whereby Control Data has agreed to assign its rights in and under the Agreement to 3M. The effectiveness of the contract, however, is conditioned upon obtaining

silent on the issue of assignability and makes no express reference to the word assign. Although the Agreement contains additional terms and conditions for termination and extension thereof, these are not in issue before the Court. Sentry alleges that the Agreement is not assignable, and therefore Control Data's contract to assign same to 3M constitutes a breach. Sentry seeks to have the Proprietary Materials returned, or in the alternative, prays that Control Data pay the balance of the $4.25 million so as to vest title with Control Data.[4] Control Data, on the other hand, claims that it has not breached the Agreement because it is assignable in the absence of any term expressly or impliedly prohibiting its intended assignment to 3M.

## III. STANDARD FOR SUMMARY JUDGMENT

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings in the Bankruptcy Court by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56.

The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when no genuine issue of material fact is in dispute. *Farries v. Stanadyne/Chicago Div.*, 832 F.2d 374, 378 (7th Cir.1987). The burden is on the moving party to show that no genuine issue of

material fact is in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Moreover, all reasonable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Marine Bank, Nat. Ass'n v. Meat Counter, Inc.*, 826 F.2d 1577, 1579 (7th Cir.1987); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987); *Bartman v. Allis–Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir.1986), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987). On cross motions for summary judgment, the Court must rule on each party's motion individually, denying both motions if a genuine issue of material fact exists. *ITT Indus. Credit Co. v. D.S. America, Inc.*, 674 F.Supp. 1330, 1331 (N.D.Ill.1987); *Wausaw Ins. Co. v. Valspar Corp.*, 594 F.Supp. 269, 270 (N.D.Ill.1984).

The Court has reviewed all pleadings, both affidavits and the exhibits submitted and hereby finds that no genuine issue of material fact exists and that Control Data is entitled to summary judgment as a matter of law. The parties have filed pleadings in compliance with Rule 12 of the General Rules of the United States District Court for the Northern District of Illinois. The only contested fact is whether Control Data agreed to use its best efforts to market, sell and license the Systems and Proprietary Materials. Pursuant to the standard provided in Rule 56(c), the mere existence of an alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of

---

4. court approval or judicial confirmation of Control Data's right to make the assignment. The other terms and conditions of Control Data's contract with 3M are not in the record. However, same are not material to the ultimate issue of the assignability of the Agreement between Sentry and Control Data.

4. To date, Control Data has paid Sentry $1.5 million as a nonrefundable prepaid royalty. Control Data has received an additional $15,000 credit towards royalty payments by a court-approved amendment to the Agreement dated June 25, 1985. The other terms of the amendment are not material to or dispositive of the issues before the Court.

*material* fact. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. This disputed fact is not outcome determinative on the assignability issue. Hence, the factual dispute is not "material" thereby precluding the entry of summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

## IV. CHOICE OF LAW

█ Paragraph sixteen of the Agreement provides that it is to be "governed by the laws of Minnesota."[5] Generally, parties may agree that the construction and validity of a contract may be governed by the law agreed upon by them. *Wabash, Inc. v. Avnet, Inc.*, 516 F.Supp. 995, 998 (N.D.Ill.1981); *Jones & McKnight Corp. v. Birdsboro Corporation*, 320 F.Supp. 39, 42 n. 3 (N.D.Ill.1970). Minnesota law also allows parties to a contract to control the choice of law by express contractual provision. *See Milliken and Co. v. Eagle Packaging Co.*, 295 N.W.2d 377, 380 (Minn. 1980). Therefore, based on the express provision in the Agreement and the controlling authority, the Court must look to the substantive law of Minnesota in determining the issue of assignability.

## V. SUMMARY OF THE ARGUMENTS

Sentry sets forth several arguments to support its claim that the Agreement may not be assigned. Sentry's principal arguments raised in its motion for summary judgment and memorandum in support of its motion thereof are:

(1) Control Data may not assign its obligations under the Agreement without Sentry's consent;

(2) The Agreement itself does not expressly permit an assignment by Control Data of its interests therein;

(3) Control Data may not delegate its duties under the Agreement because its acts or qualities formed a material part of the Agreement which makes it a personal services contract;

(4) Control Data's separate contract with 3M constitutes a breach of the Agreement thereby entitling Control Data to recover the Proprietary Materials; and

(5) Control Data has failed to use its best efforts to market, sell and license the Systems and Proprietary Materials.

Control Data's main arguments raised in its cross motion for summary judgment and memorandum in support thereof are:

(1) The Agreement contains no clause requiring Control Data to use its best efforts to market, sell or license the Systems and Proprietary Materials;

(2) The Agreement is silent on the assignability thereof, is not a personal services contract nor does it involve a special or fiduciary relationship between the parties and therefore is assignable in the absence of a term prohibiting the intended assignment;

(3) Control Data's separate contract with 3M is conditional upon court approval and prospective and therefore does not constitute a breach of the Agreement with Sentry; and

(4) Control Data has paid or has been credited over $1.5 million to date which is all that is required of it at this time and has therefore fully performed its duties so Sentry is not entitled to the return of the Proprietary Materials, rescission of the Agreement or other relief sought.

### A. The Assignability of the Agreement

The law in Minnesota on the issue of assignability of a contract is substantially similar to the law in Illinois. It is well established that absent a provision to the contrary, a contract is assignable unless it involves personal services. *See Egner v. States Realty Co.*, 223 Minn. 305, 312, 26 N.W.2d 464, 469, (1947); *Smith v. Zuckman*, 203 Minn. 535, 538, 282 N.W. 269, 271 (1938). Minnesota law provides that oral negotiations or agreements which preceded or accompanied the execution of a written contract may be used to explain its un-

---

**5.** The parties agree in the pleadings filed that the governing substantive law in this dispute is that of Minnesota.

certain terms but not to contradict or nullify its express terms. *Paul W. Abbott, Inc. v. Axel Newman Heat. & Plumb. Co.*, 282 Minn. 493, 495, 166 N.W.2d 323, 325 (1969). All contract negotiations are superseded by a written contract. *Hoyt v. Brokaw*, 359 N.W.2d 310, 311 (Minn.App.1984). Only if a contract is ambiguous will the court consider extrinsic evidence to aid in the construction of the contract. *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn.1982).

Whether a contract is ambiguous or not is a question of law. *Employers Liability Assurance Corporation v. Morse*, 261 Minn. 259, 263, 111 N.W.2d 620, 624 (1961). A contract is considered ambiguous if it is reasonably susceptible to more than one construction. *Lamb Plumbing & Heating Co. v. Kraus–Anderson*, 296 N.W.2d 859, 862 (Minn.1980). If the language of the contract is plain and unambiguous, the court may not construe it. *State By Crow Wing v. City of Breezy Point*, 363 N.W.2d 778, 781 (Minn.App.1985); *Starr v. Starr*, 312 Minn. 561, 251 N.W.2d 341, 342 (1977). Even though contracting parties may dispute the effect of their written agreement, if the writing is clear and definite, the intent of the parties must be discerned solely from the terms of the contract. *Medtronic, Inc. v. Catalyst Research Corp.*, 518 F.Supp. 946, 950 (D.C.Minn. 1981).

■ The Court finds that the Agreement is not ambiguous on the issue of whether or not its terms expressly or impliedly prohibit an assignment by Control Data. The Court further finds that the Agreement is not susceptible to more than one meaning on the issue of assignability. The Court has reviewed the Agreement as a whole and finds that it makes no express or implied reference to personal services, to marketing best efforts, or to any prohibition on assignment. Thus, the Court finds the Agreement to be unambiguous on that issue. Therefore, the Court may not otherwise construe the Agreement as Sentry suggests.

In a recent case, *Saliterman v. Finney*, 361 N.W.2d 175 (Minn.App.1985), the question of whether a covenant not to compete in an employment agreement could be assigned ancillary to the sale of a business was addressed by the Court of Appeals of Minnesota. That agreement was silent on the issue of assignability. However, like the case at bar, the agreement in *Saliterman* contained a provision binding the successors in interest. The court, finding that the assignment was effective, opined that "[t]he contract language manifests that the parties contemplated and assented to the future assignment of their respective interests, unconditionally." 361 N.W.2d 175 at 178 (citing Restatement (Second) of Contracts § 323(1) (1979)).

The Court finds that the language of the Agreement, specifically, paragraphs 1, 3, 4 and 15, contemplates more than the possibility of an assignment or other form of transfer of Control Data's interests under the Agreement. Paragraph four mandates royalty payments to Sentry from Control Data for each System either sublicensed or sold. Paragraph fifteen binds the parties and expressly binds their successors.[6] The authority granted Control Data to sell and grant sublicenses in paragraph one, combined with the authority under paragraph four directing that royalties be paid for any such sale or sublicense, demonstrates a binding assent for transfer by Control Data. Various contractual rights acquired by Control Data under the Agreement may be transferred by assignment, sale or other mode of conveyance to other parties at all times during the term of the Agreement. Those paragraphs do not restrict Control Data to subsequent conveyances solely by sublicenses.

■ The Court notes that in Minnesota, a valid assignment operates to vest in the assignee the same right, title, or interest that the assignor had in the property assigned. *State Ex Rel. Southwell v. Chamberland*, 361 N.W.2d 814, 818 (Minn.1985). In addition, an assignment does not absolve

---

**6.** Paragraph 15 of the Agreement provides:
   *Successors.* This Agreement shall be binding upon the parties and their successors, including

Sentry as debtor in possession, any trustee or agent hereinafter appointed with respect to Sentry or its assets, and the estate of Sentry.

the assignor of its obligations under a contract. *Tony and Leo, Inc. v. U.S. Fid. & Guar. Co.*, 281 N.W.2d 862, 865 (Minn. 1979). In *Pioneer Loan & Land Co. v. Cowden*, 128 Minn. 307, 310, 150 N.W. 903, 904–05 (1915), the Supreme Court of Minnesota in addressing the issue of assignability of an executory contract noted in dicta:

> The assignment of an executory contract by one party to it does not relieve the assignor of his personal liability to the other contracting party, nor does it create a personal liability on the part of the assignee, without provision to that effect. But the assignee may not enforce the contract against the other contracting party until the obligations which the contract imposes have been performed by some one. He takes his assignment incumbered by all the burdens to which it was subject in the hands of the assignor. (citations omitted)

128 Minn. at 310; 150 N.W. at 904–05. *See also Meyers v. Postal Finance Co.*, 287 N.W.2d 614, 617 (Minn.1979). Thus, the proposed assignment to 3M does not insulate Control Data from potential future liability to Sentry under the Agreement.

### B. The Language of the Agreement Supports Assignment

■ Another argument Sentry sets forth in support of its position is the language of the Agreement itself. Sentry alleges that certain elements of the Agreement support the conclusion that the Agreement is not assignable. For instance, Sentry claims that paragraph fifteen specifically provides that the Agreement shall bind the parties and their successors but, makes no mention of assigns. Sentry contends that the absence of this word supports the conclusion that an assignment is not authorized under the Agreement. In light of the Minnesota cases cited herein and the provisions of the Agreement discussed above, the Court does not agree with this proposition. The absence of the term assignment or the word assign in the Agreement does not support Sentry's contention of any express or implied intention of the parties to prohibit

assignment. By refraining from incorporating any language prohibiting the assignment of the Agreement, assignment is permitted under the above-referenced authorities.

Paragraph one of the Agreement authorizes sublicensing. Sentry claims, however, that this provision authorizes only sublicensing, not assignment. Sentry further argues that the purpose behind granting a sublicensing provision was twofold: (1) to give Control Data an opportunity to employ other parties to assist in the development and installation of the Systems and Proprietary Materials; and (2) to allow Control Data to give the purchasers of the Systems and Proprietary Materials the necessary rights to use same without infringing upon Sentry's property rights. Although this may in fact be a purpose behind the granting of sublicenses, the sublicensees or purchasers are the end users under paragraph four who will pay the money in royalties. Whether end users are sublicensed or sold the property rights, they pay the royalties to make up the balance of the $4.25 million owed to Sentry under paragraph four of the Agreement. The Agreement itself contemplates conveyances by Control Data to multiple parties, whether or not such conveyances would be categorized as sublicenses, assignments, sales or some other mode by which Control Data's interests acquired under the Agreement may be transferred.

### C. Status of the Agreement as a Personal Service Contract

■ Because the Agreement is silent on the issue of assignability, the question then narrows to whether the Agreement between the parties constitutes a contract involving personal or unique services. Personal service contracts are an exception to the general rule stated in the Minnesota authorities, allowing assignment of contracts in the absence of an express or implied term prohibiting assignment. The Court finds that the Agreement does not constitute a contract for personal services despite the affidavit of the president of Sentry, Sheldon Dorenfest. In his affidavit, Dorenfest, concludes that the parties

conducted negotiations to include the term of best efforts in the Agreement. Dorenfest states that Sentry chose Control Data on the premise that Control Data would use its best efforts to market and distribute the Systems and Proprietary Materials. Dorenfest further concludes that Control Data's personal performance was an important inducement to Sentry's entering into the Agreement. Dorenfest's affidavit in support of such contentions however, contains many conclusory averments and self-serving statements.[7]

■ A party opposing a properly supported summary judgment motion may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuinely disputed issue. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Moreover, an affidavit submitted in support of a motion for summary judgment must be made on the personal knowledge of the affiant, must set forth facts (not mere conclusions) that would be admissible in evidence and must show affirmatively that the affiant can competently testify to matters stated therein. Fed.R.Civ.P. 56(e). Dorenfest fails to recite specific facts in his affidavit. Accordingly, the Court gives little weight to those conclusory and self-serving portions of the affidavit. The intent of the parties becomes relevant only when the contract language is ambiguous. *Fena v. Wickstrom,* 348 N.W.2d 389, 390 (Minn.App.1984). This precedent applies because the Court has found the Agreement unambiguous on the issue presented.

Contrary to Dorenfest's conclusory statements, the language of the Agreement itself suggests that the Agreement does not involve unique personal services capable of performance only by Control Data alone. The Agreement does not contain any recital, term, condition or provision expressly stating that Control Data's performance and duties thereunder are unique and special and could be accomplished only by Control Data. The Agreement, read as a whole, does not imply any special relationship, fiduciary or otherwise, between the parties.

#### D. · The Contract between Control Data and 3M

■ Next, Sentry argues that the 3M contract is a breach of the Agreement. Control Data contends that it would be entitled to summary judgment even if the Court found that the Agreement could not be assigned because Control Data has not yet *actually* assigned the Agreement to 3M. These arguments are not dispositive of and need not preclude the entry of summary judgment. Control Data admits that it has entered into a contract with 3M. However, Control Data will honor the contract only if the Court makes a favorable determination on the issue of assignability. The Court finds that the controversy at this stage constitutes an alleged anticipatory breach by Control Data if not an actual breach as alleged by Sentry, thus making the case ripe for determination at this time. The interests of judicial economy are served by avoidance of a subsequent adversary proceeding which might be filed upon Control Data's actual assignment to 3M. By holding that Control Data may assign its interests under the Agreement, it follows that Control Data's separate contract with 3M does not, in and of itself, constitute a breach of the Agreement.

---

7. In particular, paragraphs eight and nine of Dorenfest's affidavit provide:

    8. Sentry entered into the License Agreement with Control Data, in part, because Sentry believed that the knowledge, experience and expertise of Control Data put Control Data in an advantageous position to market, license and sell the Systems. Moreover, Sentry was assured by Control Data that Control Data would use its best efforts to market, license and sell the Systems. The particular qualities possessed by Control Data were therefore central to Sentry's decision to enter into the License Agreement.

9. Moreover, in entering into the License Agreement with Control Data, Sentry did not give and did not intend to give Control Data the right to transfer or assign its obligations or duties under the License Agreement to a third party which Sentry had not approved of and with whom Sentry had not contracted. Sentry has not consented to the transfer or assignment by Control Data of its obligations or duties under the License Agreement to 3M Corporation or any other third party.

In finding that Control Data has not breached the Agreement and that it has substantially performed its obligations thereunder to date, the Court therefore further finds that Sentry is not entitled to rescission of the Agreement or return of the Proprietary Materials. *See, e.g., Gaertner v. Rees,* 259 Minn. 299, 303, 107 N.W.2d 365, 368 (1961) ("The rule appears to be well-established that only a material breach of a contract or a substantial failure in its performance justifies a party thereto in rescinding."); *accord Cut Price Super Markets v. Kingpin Foods, Inc.,* 256 Minn. 339, 351, 98 N.W.2d 257, 266 (1959).

### E. The Requirement of Best Efforts

■ Lastly, Sentry alleges that Control Data breached the Agreement by failing to use its best efforts in marketing the computer equipment and software. As noted above, the Agreement makes no reference to Control Data using best efforts to market and develop the products. Courts cannot remake contracts or imply provisions through judicial interpretation. *In re Stevenson Associates, Inc.,* 777 F.2d 415, 421 (8th Cir.1985); *Telex Corp. v. Data Products,* 271 Minn. 288, 295, 135 N.W.2d 681, 687 (1965). Paragraph two of the Agreement makes reference to the use of best efforts in the settlement of infringement claims only.[8] The use of the term best efforts in the context of infringement claims does not imply a similar obligation or duty on Control Data for marketing and development of the Systems and Proprietary Materials and therefore is not germane to the issue of assignability.

In an affidavit in support of Control Data's motion, Robert L. White, who was a staff attorney for Control Data at the time of the contract negotiations, stated that at no time during his negotiation of the Agreement did the issue of assignability arise. (para. 4, White Affidavit) Furthermore, White claims that on January 21, 1985, he personally advised Dorenfest and others at Sentry that Control Data would not agree to the inclusion of a best efforts requirement. Accordingly, this term was not included. (paras. 7, 8 and 9, White Affidavit) Neither Dorenfest's affidavit nor any other pleading filed by Sentry rebuts these sworn, detailed factual statements.

■ In support of its motion for summary judgment, Sentry argues that because it was allegedly assured by Control Data that Control Data would use its best efforts to market, license and sell the Systems and Proprietary Materials, this therefore raises a genuine issue of material fact, thus preventing an award of summary judgment for Control Data. The Court does not agree with this contention. Even though the issue of whether Control Data agreed to use its best efforts to market the Systems and Proprietary Materials may be in dispute, it is not, however, a material issue relevant to the Court's determination of the assignability of the Agreement.[9] In Sentry's memorandum in further support of its motion, Sentry admits that this disputed fact is not relevant to the issue of assignability. (Memorandum in Further Support of Plaintiff's Motion for Summary Judgment, p. three) When a party raises a factual dispute that is not material to the issue at bar, a Court need not deny summary judgment based on that factual dispute alone if all material facts are not disputed on the issues involved. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The Local Rule 12 statements clearly show that all material facts are undisputed on the issue of assignability.

### VI. CONCLUSION

For the foregoing reasons, the Court hereby denies the motion of Sentry for summary judgment and hereby grants the

---

**8.** Paragraph two of the Agreement reads in relevant part:

Each party agrees to use its best efforts to cause any dispute concerning settlement of infringement claims to be considered, negotiated in good faith, and resolved as soon as practicable. . . .

**9.** "Materiality" of a dispute depends on the fact being outcome determinative. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

motion of Control Data for summary judgment.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

See written Order.