## RAYMOND A. WOLFF v. CHARLES S. McCROSSAN AND OTHERS.

210 N. W. 2d 41.

April 27, 1973—No. 43514.

*Shear & Rooney, Larry Sullivan,* and *Thomas Rooney,* for appellants.

*Fred Burstein* and *Gregg Corwin,* for respondent.

Heard before Knutson, C. J., and Todd, MacLaughlin, and Olson, JJ.

O. Russell Olson, Justice.*

Defendants appeal from an order denying their motion for amended findings of fact, conclusions of law, and order for judgment or, in the alternative, a new trial, and from the judgment entered. The trial court in its decision ordered (1) cancellation

---

* Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

of a real estate sale agreement between defendant Jeannette Siebke (plaintiff's landlord) and codefendant Charles McCrossan, and (2) directed specific performance of an option by the conveyance of the same real estate parcel from the landlord to the plaintiff tenant, Raymond A. Wolff.

The issues on appeal, the resolution of which is dispositive of the case, are (1) whether defendant Siebke orally waived certain conditions of the option agreement regarding terms of payment and (2) whether she had waived compliance with the option agreement's specified time period in which the tenant could exercise certain rights of purchase contained in the option.

A detailed statement of the facts appears necessary. Plaintiff tenant's written lease with defendant landlord contained an option to purchase the land at any time after June 30, 1969; according to the terms of the lease, the option to purchase (a) "shall be exercised by Tenant by providing written notice to Landlord" specifying the price offered but not less than $65,000; (b) the offer "shall be accepted by the Landlord within thirty (30) days" unless within that time the landlord receives another bona fide offer, (c) in which case the tenant has 5 days after receipt of the bona fide offer in which "to purchase the premises at said price."

On May 26, 1970, plaintiff sought to exercise his option by delivering to defendant Siebke a written offer (in the form of a signed purchase agreement) of $65,000. The document specified payment by a $2,000 downpayment and amortization of the balance of the purchase price over a period of years at $400 per month at 6 percent interest.

In March 1970, Mrs. Siebke had stated to plaintiff that she did not want the purchase price in one payment but desired small monthly payments over a number of years without a large downpayment, a statement upon which plaintiff relied in submitting his offer to purchase in May and offers, discussed hereafter, made in June.

On May 27, 1970, Mrs. Siebke received an offer from de-

fendant McCrossan to purchase the land at a price of $80,000, with $1,000 earnest money and $7,000 on closing, and the balance at 7 percent interest amortized in 10 equal annual installments, with the first payment due July 1972, over a year later. Notice of the McCrossan offer was transmitted to plaintiff tenant on May 27, 1970, by Mrs. Siebke's attorney, who told plaintiff that, "they weren't in a hurry at that particular time, and that he wouldn't let Mrs. Siebke sign any papers until he had heard from [plaintiff]." On May 28, the landlord's attorney also told plaintiff's attorney that time was not essential and that he need not be concerned about the specific time provisions of the option agreement.

On June 1, 1970, plaintiff's attorney drafted a second offer which plaintiff immediately delivered to defendant Siebke's attorney. This offer met the $80,000 purchase price in the McCrossan offer but differed in the downpayment, the method of financing, and amortization payments from the McCrossan offer.

On Friday, June 5, defendant Siebke's attorney personally delivered a letter to plaintiff's attorney which specified the reasons why the landlord found plaintiff's second offer unacceptable. The reasons included the difference in downpayment and amortization. When this letter was delivered, plaintiff's attorney informed defendant Siebke's attorney that plaintiff would submit the precise terms McCrossan had offered. Mrs. Siebke's attorney, according to plaintiff's attorney, answered: "Okay, there is no hurry with that."

On Monday, June 8, 1970, plaintiff delivered a third offer in the form of a signed purchase agreement, conforming in all material respects to the McCrossan offer and satisfying the objections set out in the landlord's June 5 letter.

On June 11, defendant Siebke's attorney advised plaintiff's attorney that McCrossan would present another offer. Plaintiff's attorney protested that a second McCrossan offer was out of order and that the landlord was obligated to accept the tenant's offer tendered June 8, 1970. However, on June 12, defendant

Siebke accepted McCrossan's second offer by executing a purchase agreement and, on June 17, signed a contract for deed with McCrossan on terms different from the May 27 McCrossan offer. Meanwhile, on June 16, this lawsuit was commenced seeking to enjoin the sale of the land to McCrossan (later amended to seek cancellation of the contract for deed), and requesting specific performance of the purchase option pursuant to alleged compliance by plaintiff with its provisions.

The trial court in its findings of fact determined in part that defendant Siebke had waived the specific time provisions of the option agreement, including the 5-day period given the tenant to comply with the bona fide offer of any third party. The trial court also found that the tenant's offer of June 8, 1970, conformed to the provisions of McCrossan's initial offer dated May 27 and granted plaintiff relief, canceling the contract for deed between defendants Siebke and Charles McCrossan and requiring specific performance of the land sale between the landlord and the tenant.

We affirm.

Generally, where a defendant has orally waived certain conditions of a written contract, he is estopped from asserting the nonperformance of those conditions as a defense in a suit upon the contract. 2 Corbin, Contracts, § 310, p. 113, provides:

"Where some performance by the plaintiff, not involving the time element, is a condition precedent, and the failure of the plaintiff to render such performance is caused by the defendant and not by the plaintiff's own inability, the failure to perform that condition is not a good defense in a suit upon the contract. This would be so in the cases of contracts not within the statute of frauds; and it is equally so of contracts that are in writing and are required to be so by the statute. * * *

"The foregoing principles apply even where the plaintiff's non-performance of a condition was caused by an oral agreement substituting something else."

See, also, 4 Williston, Contracts (3 ed.) § 595.

Plaintiff's offer of June 1, 1970, differed from that submitted by McCrossan in the size of the downpayment, the financing terms, and the time required for payment of the balance. Defendant Siebke objected to such differences in her June 5 letter. However, in March 1970, she had informed plaintiff that she preferred a small downpayment and payments spread over a number of years. Thus, she is estopped from asserting plaintiff's failure to conform to the terms of the McCrossan offer.

The finding of the trial court that defendant Siebke waived the option agreement's specified 5-day period is supported in the evidence by the statements on May 28, 1970, and on June 5, 1970, of her attorney (acting as her agent) that the tenant need "not be in a hurry." Defendant Siebke's attorney admitted in a pretrial deposition that he "might well have said that." 2 Corbin, Contracts, § 310, p. 112, provides:

"* * * [W]here performance by the plaintiff within a specified time was a condition precedent to the defendant's duty to perform his part—if the plaintiff has been caused to delay his performance beyond the specified time by the request or agreement or other conduct of the defendant, the plaintiff can enforce the contract in spite of his delay."

Minnesota case law is in accord with the proposition that where the course of conduct of a party entitled to the performance of certain terms or conditions of a contract has led the other party to believe that such performance will not be required until it has become too late to perform, the person who has so conducted himself is barred from asserting the right he had. See, Malmquist v. Peterson, 149 Minn. 223, 183 N. W. 138 (1921). Here, defendant Siebke waived compliance with the time provisions of the option agreement.

Affirmed.

On July 30, 1973, the following was filed:

ORDER REMANDING CASE TO TRIAL COURT
AND DENIAL OF PETITION FOR REHEARING

Part III of the trial court's order for judgment reads as follows:

"That any and all rental payments made by plaintiff to defendant Siebke from or after June 8, 1970, be applied against the purchase price of said property less any accrued interest to the date hereof."

However the defendant correctly demonstrates that the trial court, (inadvertently perhaps), failed to note the provision of the option clause which provides for payment of real estate taxes by the Seller only in the year of sale (1970) and that therefore the obligation for real estate taxes and insurance premiums under the above Part III of the judgment should be credited to the defendant before allocating rent toward payments on the purchase price.

Therefore Part III of the Court's order for judgment should be amended to read as follows:

"That any and all rental payments made by plaintiff to defendant Siebke from or after June 8, 1970, be applied against the purchase price of said property less any accrued interest to the date hereof, less any real estate taxes paid by the defendants for 1971 and subsequent years, and less any premiums paid for fire and extended coverage insurance from the period from and after June 8, 1970."

The case is remanded to the trial court to amend Part III of its order for Judgment as indicated.

The remainder of the petition for rehearing is denied.

OSCAR R. KNUTSON
Chief Justice