**OLD MILL PRINTERS, Respondent,**

v.

**Mathew KRUSE, Appellant.**

**No. C8–86–602.**

Court of Appeals of Minnesota.

Aug. 26, 1986.

Richard D. Beerling, Mankato, for respondent.

Rebecca L. Wessman, Mankato, for appellant.

Considered and decided by FOLEY, P.J., and HUSPENI and CRIPPEN, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Respondent Old Mill Printers (Old Mill) brought this action against appellant Mathew Kruse to collect amounts allegedly due for printing services furnished to Kruse. After removal from conciliation court and following a short trial, the trial court awarded judgment in favor of Old Mill in the amount of $742. The trial court denied Kruse's motion for amended findings or a new trial. On appeal, Kruse claims that he was relieved of his obligation to reimburse Old Mill for its printing services because of Old Mill's failure to perform a condition precedent or, alternatively, because of its lack of substantial performance. We affirm.

## FACTS

Around December 14, 1984, Mathew Kruse brought one of his paintings to Old

Mill and ordered 300 prints of it. At that time, he told Betty Bruesewitz, an Old Mill customer service representative, that he wanted the prints to be slightly darker than the original painting and that he needed the prints by January 5th or 6th.

Old Mill sent the painting to another company to have a color separation done and a color key produced, the first steps in the printing process. The colors were separated into four color groups: yellow, red, blue and black. Walter Grochow, the manager of printing productions at Old Mill, testified that a customer must approve the color key before Old Mill will proceed with printing a painting.

Kruse returned to Old Mill on January 5th or 6th and expected the prints to be done. The prints were not done yet, but the color key was. Kruse looked at the color key and saw it had not been darkened as he had requested. Because of his deadline and his belief that any alterations would cost more, Kruse decided to proceed with the unsatisfactory color key. He told Bruesewitz that they could darken the print during the printing process, but he wanted to be present at that time so he could give directions as to how it should be done. He directed Bruesewitz to call him the night before the printing was to be done because he could only arrange to stop at the Old Mill in the early morning before he went to work.

The special instructions on the order form stated, in relevant part: "Run ink high"; "Call Matt when ready for run * * 1 day in advance." "Run ink high" meant that the printer should run the colors darker.

The evening before Old Mill started the print run, Bruesewitz tried, without success, to contact Kruse. Old Mill left a message with Kruse's wife the next morning and she was unable to contact him until about two o'clock that afternoon.

When Kruse arrived at Old Mill that afternoon, the yellow hues had already been run. There were three colors left to run. Kruse testified that he told the printer that he "probably would have to throw [the] pictures away," because the yellow hues had been run so high. He said "I would be surprised * * * unless you go real strong with the [remaining] colors * * * if this would be acceptable." Kruse did not tell the printer to stop nor did he say that he would not accept the prints. Kruse did not affirmatively tell her to continue either. After he left Old Mill, Kruse mulled over his dealings with the company and decided not to pay for the prints. Kruse did not inform anyone at Old Mill of his decision.

The next day Kruse picked up one of the prints that Old Mill had done and decided to have another company print the painting. He then picked up the painting and brought it to another company which did a print in three days. He was satisfied with that company's work and paid approximately $1,147 for 1,000 prints.

Kruse never picked up the 300 prints that Old Mill made. Old Mill sent Kruse a bill in the amount of $742 which he never paid.

Kruse testified that he was dissatisfied with the Old Mill print, because the yellow hues were too strong and the other colors too light and, as a result, the print was not even as dark as the original painting. Kruse testified that if he had been at the Old Mill before the yellow print run, he would have had the printer lighten the yellow hues and darken the others.

After Old Mill was granted a conciliation court judgment against Kruse, Kruse removed the matter to the county court. Following a one day trial to the court, the trial court found in part:

5. That after inspecting the first run, [Kruse] did not tell [Old Mill's] representative to stop work on the project although he was somewhat critical of its appearance.

6. That [Old Mill] completed the printing; that [Kruse] picked up his painting; that [Kruse] failed to pay for the printing * * *.

7. That [Old Mill] performed the work and provided the services at [Kruse's] request; that the reasonable value of

[Old Mill's] work and services * * * [is] $742.00.

In denying Kruse's motion for amended findings or a new trial, the trial court restated its view of the facts and concluded that because Kruse failed to inform Old Mill to stop the printing process after he viewed the yellow run, he was obliged to pay Old Mill the cost of its services.

## ISSUES

1. Did Kruse waive any condition of notice that may have existed?

2. Did Kruse waive his right to rescind the contract based upon Old Mill's alleged failure to substantially perform the contract?

## ANALYSIS

### I.

Kruse first argues that notice of the print run was a condition precedent to his obligation to pay Old Mill, and that there was a failure of that condition because he did not get the required notice until after the yellow hues had been run.

■ We conclude that Kruse waived any condition of notice that may have existed. A condition of notice "can be eliminated by a voluntary waiver of the promisor, either before or after the time when the notice is due. As a matter of course, the promisor may by his conduct easily become estopped to insist upon the condition of notice." 3A A. Corbin, Corbin on Contracts § 759, at 513–14 (1960). *See also* Restatement Second of Contracts § 84 comment d (1981). A party can waive a condition by receiving further performance from the other party, with knowledge that the condition has not been performed. 3A Corbin on Contracts § 755, at 497. *See also* Restatement Second of Contracts § 84 comment e (nonverbal conduct can constitute a waiver).

■ It is undisputed that after Kruse arrived at the Old Mill and realized that the print run had started before he could adjust the yellow hues, he did not tell Old Mill to stop the printing process. Kruse did

nothing to indicate that he was going to discontinue performance of his part of the contract based upon the untimely notice. Kruse's comments regarding the prints were not enough to communicate Kruse's intent to discontinue his performance under the contract. We conclude that Kruse waived the claimed condition of notice by permitting Old Mill to continue the printing process.

As a result of his waiver, Kruse is estopped from asserting the nonperformance of the condition as a defense in Old Mill's suit upon the contract. *See Wolff v. McCrossan,* 296 Minn. 141, 144, 210 N.W.2d 41, 43 (1973).

■ We need not address whether Kruse is entitled to damages arising from any breach of contract that may have resulted from the nonperformance of the claimed condition of notice. *See* 3A Corbin on Contracts § 766, at 538–39; Restatement Second of Contracts § 246 comment b. Kruse did not make a counterclaim for damages against Old Mill and we are unable to consider the merits of such a claim at this stage in the proceeding. *See Roberge v. Cambridge Cooperative Creamery Co.,* 243 Minn. 230, 236, 67 N.W.2d 400, 404 (1954) (an appellate court will not reverse a case and remand it solely for the purpose of permitting a party to move to amend the pleadings).

### II.

■ Kruse also argues that Old Mill failed to substantially perform the contract and, therefore, he does not owe any obligation to pay Old Mill for its services. We cannot agree. The trial court's finding that "[Old Mill] performed the work and provided the services at [Kruse's] request" is supported by the record.

■ Further, even if there had been a failure of Old Mill to substantially perform, Kruse himself had contractual obligations which remained undischarged. His comments to Old Mill when he viewed the print run of yellow hues were insufficient to cause Old Mill to stop printing. It contin-

ued to do so in reasonable reliance upon Kruse's words and actions. "The right to rescind must be exercised promptly upon discovery of the facts from which it arises for the reason that * * * it may be waived by continuing to treat the contract as a subsisting obligation." *Gaertner v. Rees,* 259 Minn. 299, 303, 107 N.W.2d 365, 368 (1961). *See also Cut Price Super Markets v. Kingpin Foods, Inc.,* 256 Minn. 339, 352, 98 N.W.2d 257, 267 (1959) (prompt notice of intent to rescind is required upon the discovery of any claimed breach); *Schnepf v. McNamara,* 354 Mich. 393, 397, 93 N.W.2d 230, 232 (1958) (a waiver can be anything that draws on the other party to execute the agreement after the default or that shows that it is deemed a subsisting agreement after the default). Kruse waived any right to rescind the contract by failing to tell Old Mill to stop printing once he saw that the print run of the yellow hues was unacceptable to him and felt that Old Mill had breached the contract. The trial court's determination that "the reasonable value of [Old Mill's] work and services * * * is * * * $742.00" is not erroneous.

Again, because Kruse did not make a counterclaim for damages, we do not address the merits of such a claim. *See Roberge,* 243 Minn. 230, 67 N.W.2d 400.

## DECISION

The trial court did not err in awarding judgment in favor of respondent. Appellant waived both the claimed condition of notice and any right to rescind that arose from the failure of substantial performance, and he did not make a counterclaim for damages.

Affirmed.