**CREATIVE COMMUNICATIONS CONSULTANTS, INC.,
Respondent,**

v.

**Robert G. GAYLORD, Appellant.**

**No. C3–87–50.**

Court of Appeals of Minnesota.

April 7, 1987.

---

Michael A. Stern, Fredrikson & Byron, P.A., Minneapolis, for respondent.

Robert G. Share, Patrick M. Garry, Briggs & Morgan, Minneapolis, for appellant.

## OPINION

PARKER, Judge.

The trial court granted respondent's motion for a temporary injunction precluding its former employee, Robert G. Gaylord, from violating the terms of a "Covenant Not to Compete" that Gaylord had signed in accepting employment with respondent. Gaylord appeals, and we affirm.

## FACTS

Robert Gaylord was employed by The Coulter Agency (Coulter), a Minneapolis advertising agency, from November 1984 to January 1, 1986, as an account executive. In 1985 respondent Creative Communications Consultants (CCC) began negotiations to acquire Coulter. Pursuant to these negotiations, CCC presented Gaylord with a proposed employment contract, and its representatives met with him to discuss the contract. The proposed agreement contained a "Covenant Not to Compete" which would preclude Gaylord, for a period of one year after leaving CCC, from soliciting or performing services for any account that was a client of CCC during the year prior to Gaylord's departure. After amending the contract to reflect certain agreements as to the payment of commissions, Gaylord and CCC signed the employment contract, including the non-compete covenant, on or about October 24, 1985.

CCC subsequently acquired Coulter, and Gaylord joined them effective January 1, 1986, as an account executive. In April 1986 Gaylord discovered that CCC was interpreting the commission provisions of his employment contract so that he was being paid commissions only on new business and not on existing business, and that certain clients were not included within CCC's definition of new business.

On May 13, 1986, Gaylord terminated his employment at CCC, telling his supervisor that he "did not want to pursue this career and he wanted to look into other opportunities." At the time of his resignation, Gaylord executed a document acknowledging the validity of the non-compete covenant and agreeing to be bound by it.

On May 19, 1986, Gaylord accepted employment as an account executive with The Communications Group, a competing Minneapolis advertising agency. Within weeks, four of Gaylord's former clients from CCC left that company and brought their accounts to The Communications Group.

In August 1986 CCC brought an action for a temporary restraining order precluding Gaylord from soliciting and performing services for certain former clients of CCC and from disclosing its confidential information. The trial court granted the order. CCC subsequently moved for a temporary injunction and the motion was granted. Gaylord now appeals.

## ISSUES

1. Did the trial court clearly abuse its discretion in ruling that the employment contract was not void under the doctrine of mutual mistake?

2. Did the trial court clearly abuse its discretion in finding that CCC would suffer irreparable harm if its request for injunctive relief were not granted?

3. Did the trial court clearly abuse its discretion in ruling that Gaylord was not excused from compliance with the non-compete covenant due to CCC's alleged breach of the employment contract?

4. Did the doctrine of unclean hands bar CCC from receiving injunctive relief?

## DISCUSSION

The sole issue on appeal of a temporary injunction is whether the trial court clearly abused its discretion "by disregard of facts or applicable principles of equity." *Edin v. Josten's, Inc.*, 343 N.W.2d 691, 693 (Minn. Ct.App.1984). The trial court's decision will stand unless it is found to be clearly erroneous. *Id.* In reviewing the trial court's decision, the appellate court must view the facts alleged in the pleadings and affidavits in the light most favorable to the prevailing party. *Integrated Development & Manufacturing Co. v. University of Minnesota*, 363 N.W.2d 845, 847 (Minn.Ct. App.1985), *pet. for rev. denied* (Minn. May 24, 1985).

### I

■ Gaylord's main contention on appeal is that his employment contract with CCC was void because the parties' different interpretations of the employment contract's commissions provision amounted to a mutual mistake. He contends the mistake was material because the parties' interpreta-

tions reflected a difference of at least $3,000 in compensation.

The doctrine of mutual mistake does not apply for two reasons. First, "the erroneous belief must relate to the facts as they exist at the time of the making of the contract." *Restatement (Second) of Contracts* § 151, comment a (1981). For example, in *Sherwood v. Walker*, 66 Mich. 568, 33 N.W. 919 (1887), the parties contracted for the sale of a cow that they both thought was barren. Much to everyone's surprise, "Rose" turned out to be pregnant. The court held that the contract was void because both parties had been mistaken as to an existing material fact going to the subject matter of the contract. As the court stated, "[a] barren cow is substantially a different creature than a breeding one." *Id.*, 66 Mich. at 577, 33 N.W. at 923.

Here, the parties were not mistaken as to an existing material fact. They merely disagreed as to the interpretation of their contract. Courts are frequently called upon to interpret arguably ambiguous provisions of written contracts about which there is disagreement; a mutual mistake is not necessarily present in each of those cases.

Moreover, "[a] mutual mistake occurs when both parties are under substantially the *same* erroneous belief as to the facts." Farnsworth, *Contracts* § 9.3 (1982) (emphasis added). As explained in one treatise,

> [a] mutual mistake is one common to both parties to a contract, each laboring under the same misconception; more precisely, it is one common to both or all parties, wherein each labors under the same misconception respecting a material fact, the terms of the agreement, or the provisions of the written instrument designed to embody such agreement.

17 C.J.S. *Contracts* § 144(a) (1963).

These parties were not "laboring under the same misconception." Indeed, the parties' *differing* interpretations of the employment contract form the basis of this appeal.

**II**

Although only the mutual mistake issue was addressed in the parties' informal briefs, three other issues were raised in Gaylord's statement of the case. These issues may be addressed quite summarily.

■ Gaylord claims CCC failed to show that it would suffer irreparable harm if injunctive relief were not granted. It is well-established that irreparable harm can arise out of the breach of a non-compete clause. *See, e.g., Cherne Industrial Inc. v. Grounds & Associates, Inc.*, 278 N.W.2d 81, 92 (Minn.1979); *see also Eutectic Welding Alloys Corp. v. West*, 281 Minn. 13, 16 n. 4, 160 N.W.2d 566, 569 n. 4 (1968) ("an inherent threat of irreparable injury may be inferred from the breach of an otherwise valid and enforceable restrictive covenant [not to compete or not to disclose trade secrets], sufficient to invoke at least temporary equitable relief.") The trial court did not abuse its discretion by finding irreparable harm in CCC's loss of clients and the threat that Gaylord would disclose confidential information.

**III**

■ Gaylord also argues that he was excused from adhering to the non-compete covenant, because CCC breached the contract first by refusing to pay him certain commissions and by paying only 33 percent of his family health coverage premiums. Even if CCC's actions did amount to a breach of the contract, Gaylord waived any such right arising from the breach when, upon terminating his employment with CCC, he signed a document acknowledging the non-compete covenant and agreeing to be bound by it. A party's continued recognition of a contract as binding after the other party's alleged breach acts as a waiver of that breach. *See, e.g., Wolff v. McCrossan*, 296 Minn. 141, 144, 210 N.W.2d 41, 43 (1973).

**IV**

■ Finally, Gaylord argues that the doctrine of unclean hands should have barred CCC from receiving injunctive relief. The unclean hands doctrine, however,

will be invoked only against a party whose conduct "has been unconscionable by reason of a bad motive, or where the result induced by his conduct will be unconscionable." *Johnson v. Freberg*, 178 Minn. 594, 597–98, 228 N.W. 159, 160 (1929). CCC's actions reflected at most a misunderstanding between the parties as to ambiguous contractual language and were not unconscionable.

### DECISION

Affirmed.